## THE HABIL.

(District Court, S. D. Alabama. February 21, 1900.)

No. 858.

1. SHIPPING—BREACH OF CHARTER PARTY—RIGHT OF ACTION FOR DAMAGES.

Libelant hired the libeled vessel under a time charter, and engaged her in voyages to a foreign port for bananas. It filed the libel to recover damages for breach of the charter party, alleging that, by reason of the defective condition of her boilers, more time was consumed in the voyages than should have been, whereby it was required to pay for the time so lost, and the fruit became damaged, and large quantities were lost, while waiting shipment and on the voyages. The evidence showed that the fruit was not owned by libelant, but by a company at the port of loading, which shipped it to libelant to be sold on commission, libelant retaining from the proceeds the freight, all advances, and its commissions, and that libelant had been reimbursed in such manner for all freight and advances on account of the shipments in question. Held that, conceding the breach of contract alleged to have been proven, libelant had sustained no damage therefrom which would sustain the action.

2. SAME—AMENDMENT OF LIBEL.

Libelant could not be permitted, by an amendment of its libel, to claim and recover the damages alleged to have resulted from the breach of the charter on behalf of the owner of the cargoes; it not appearing that libelant acted as its agent in making the charter, or that such owner had any relation to the charter.

3. DAMAGES—BREACH OF CHARTER PARTY.

The charterer of a vessel, which he employed in bringing from a foreign port cargoes of fruit owned by another, but consigned to him for sale on commission, cannot, in an action for a breach of the charter, alleged to have caused delay and consequent injury to the fruit, recover for loss of commissions which he would have made thereon; such losses being too remote and uncertain to furnish a measure of damages or to have been within the contemplation of the parties.

4. SHIPPING—INJURY TO CARGO—RIGHT OF CONSIGNEE TO SUE IN REM.

The consignee of a cargo may maintain an action in admiralty against the vessel for an injury to his interest therein, and, when he is vested with the legal ownership by an assignment of the bill of lading, he may recover for any breach of the contract made by such bill of lading; but where there was no bill of lading, and he has no interest in the cargo, if he is, in any event, authorized to recover against the vessel on behalf of the consignor, it can only be such damages as result from a breach of the contract between shipper and carrier, and arising after the cargo has been received on board.

In Admiralty. Suit in rem against the Norwegian steamship Habil to recover damages for breach of a charter party.

R. H. & N. R. Clarke, for libelant.
Gregory L. & H. T. Smith, for claimant.

TOULMIN, District Judge. The libel is to recover damages for breach of contract. It alleges that the libelant is a corporation doing business in the city of Mobile, as an importer of tropical fruits, and especially of bananas, from the port of Bocas del Toro into the port of Mobile, for sale, and for that purpose it chartered and operated steamers between said ports; that the usual course of its business was to keep an agent at said port of Bocas del Toro, to telegraph him of the departure of each of its vessels therefor, and to have him procure a cargo of fruit, to be cut and held in readiness at such port for shipment on such vessel immediately on its arrival there. It alleges that the steamship Habil was chartered under a time charter to libelant by her owners, for use in the transportation of lawful merchandise between certain ports specified in the charter party, and which covered the two ports above named. and the transportation of bananas and other fruits. The charter party provided, among other things, that the owners would maintain the vessel in a thoroughly efficient state, in hull and machinery, for and during the service, and guarantied to maintain the boilers of said vessel in a condition to bear a working pressure of at least 60 pounds during the whole term of the charter, and that the master of the vessel would prosecute his voyages with the utmost dispatch. The libelant agreed on his part to pay certain stipulated hire for the use of the vessel. On or about the 8th day of October. 1898, said vessel was ordered by libelant to proceed to Bocas del Toro for the purpose of bringing back to Mobile a cargo of bananas. Libelant charges that when said vessel left Mobile she was not in proper condition for such voyage, but that her boilers were leaking, and it was impossible to get sufficient steam for proper speed, in consequence of which she was delayed in her passage, and arrived at Bocas del Toro more than one day behind time, and that because of the defective condition of the boilers it became necessary to repair them at Bocas del Toro, which caused further delay there in taking on cargo. Libelant alleges that its agent procured a large quantity of bananas to be cut, and had them in good condition, ready for shipment upon said vessel's arrival; that her boilers continued in a defective condition during the whole of her return voyage, and thereby her speed was so diminished that she arrived in Mobile more than one day later than she should have reached there had her boilers been in good condition for such voyage. The libel alleges that the master of said vessel failed to report to libelant that she was not in fit condition for the proper prosecution of a further voyage to Bocas del Toro and return, and accordingly ordered said vessel to return to Bocas del Toro for another cargo of bananas; that for the same cause, to wit, the defective condition of her boilers, the vessel was delayed in her passage to Bocas del Toro, was delayed there for repairs, and was so delayed on her return voyage, reaching Mobile $1\frac{1}{2}$ days behind her proper time. Libelant charges that, by reason of

the said several delays, said cargoes of bananas reached Mobile in a bad condition, very much worse than they would have been if said voyages had beeen properly prosecuted. Many of the bananas were overripe and rotten, and so wholly valueless, and nearly the whole of the cargoes had greatly deteriorated in condition and value, and libelant claims that by reason thereof it has been greatly damaged. It further claims to have been damaged by such undue delay of said vessel in the prosecution of said voyages by paying to its owners the charter hire thereof for the time so lost. The libel avers demand of payment of said damages and the master's refusal to pay them.

The evidence shows that libelant chartered the steamship Habil, as stated in the libel; that the two cargoes of bananas referred to belonged to the Bocas del Toro Banana Company, doing business at Bocas del Toro as exporters and shippers of bananas; that the bananas in question were shipped by it to libelant as the commission merchants at Mobile of said banana company; that, under an arrangement made between libelant and said banana company, the libelant was to furnish the vessels to carry the bananas from Bocas del Toro to Mobile, was to sell them there, and to charge the banana company a commission of $3\frac{1}{2}$ per cent. on the gross sale of the fruit, for selling and collecting; that the freight and all other expenses of the cargoes were charged against them; that the $3\frac{1}{2}$ per cent. commissions on the sales, the freight, which was the actual charter hire of the vessel, and the expense of coaling were deducted from the proceeds of sales, and the balance of such proceeds was accounted for by libelant to said banana company; that libelant made large advances of money on said cargoes to said banana company, which advances were charged to it, and by which it became indebted to the libelant, and that the entire time of the voyages spoken of was charged to the cargoes. The evidence further shows that the advances on both said cargoes were paid in full before the libel in this case was filed; that libelant was not out anything at that time, but had been reimbursed all advances, freight, and cost; and that any balance due for advances on the particular cargoes was paid out of sales of other cargoes. The evidence is that no bills of lading were given by the vessel for the cargoes in question, but that they were shipped under the arrangement referred to between the parties, and were so consigned to the libelant; also that libelant was a stockholder in the Bocas del Toro Banana Company. There is a good deal of evidence pro and con as to the cause of the delay complained of, and as to the condition of the boilers, and the character of coal used which was furnished by libelant, and also as to the extent and amount of damage to the cargo, which, however, from my view of the case, it is unnecessary to consider.

The question first presented, on the facts in this case as made by the proof, is whether the libelant is entitled to maintain this suit. It would be entitled to recover any damages it sustained by a breach of the contract,—the charter party referred to in the libel. The breaches specially complained of are the failure of the owners of the vessel to maintain her boilers in a good and efficient condition, as

guarantied in the contract, and the master's failure to prosecute his voyages with the utmost dispatch. Assuming, for the purposes of this case, that these propositions are established, how is the libelant damaged? Where is its loss? It did not own the cargoes of bananas for the deterioration and loss of which damages are claimed. It has been paid all of its advances against the cargoes, the charter hire of the vessel, and all other costs and expenses on account of said voyages. As was said by the libelant's president and manager in business, who was a witness in the case: "It has been reimbursed everything; it is out nothing." It seems to me that this is a clear case of injuria sine damno. "Where damages are the gist of an action, and none are shown, there can be no recovery; the situation being described as injuria sine damno." 8 Am. & Eng. Enc. Law (2d Ed.) 551.

On the hearing the libelant asked leave to amend its libel in several substantial particulars, to make it conform, as near as may be, to the evidence in the case. Among other things, it is proposed to change the allegations of the libel as to the course of business between the libelant and the Bocas del Toro Company in providing and shipping the bananas from Bocas del Toro on libelant's vessels, and as to the ownership of the bananas. Libelant also proposes to amend its claim for damages by reason of loss of commissions because of the bad and unsalable condition of a large quantity of the bananas. It also asks leave to amend by bringing its suit as consignee and agent of, and for the use of, the Bocas del Toro Banana Company, as well as on its own account.

The admiralty courts are generally very liberal in the matter of amendments. But amendments in matters of substance should not be allowed on the hearing unless the justice of the case requires it, and then to conform to the proof, and in no case should an amendment be allowed on the hearing which would change the entire cause of action. I cannot see that the amendments now proposed can avail the libelant anything on the case as made by the evidence. I do not think it has a right to recover for loss of commissions. The suit is for damages for breach of the charter party. Such loss of commissions clearly could not have been contemplated as an element of damages by the parties to the contract at the time it was made. Besides, I think such commissions too remote and uncertain to be recoverable.

So far as the libelant's claim of right to sue as agent for and on behalf of the Bocas del Toro Banana Company is concerned, the answer is that it does not appear from the evidence that the charter party was made by libelant for and on behalf of said banana company, or that said banana company had any connection whatever with the charter party. The evidence does not only not disclose any relation between said banana company and the charter party, but it does not disclose what relations, if any, existed between the libelant and said banana company at the time the charter party was made, or, indeed, whether said banana company itself then existed. So far as the evidence discloses, the libelant was not at the time this suit was brought, and is not now, the agent of said banana company,

with authority to bring the suit. The North Carolina, 15 Pet. 49, 10 L. Ed. 653; Lawrence v. Minturn, 17 How. 107, 15 L. Ed. 58. It was the agent, as a commission merchant, to sell the cargoes, collect the proceeds, pay the expenses and charges against the cargoes, and to account to the banana company for the balance of such proceeds, which it seems to have done. There is no uncertainty in the law that a consignee may sue in a court of admiralty. In the Vaughn & Telegraph Case, 14 Wall. 258, 20 L. Ed. 807, the court holds, in substance, that a bill of lading made or indorsed and sent to the consignee, who makes advances on the cargo, gives the consignee sufficient title to maintain a libel in admiralty against a vessel by whose tortious act the cargo consigned to him was lost or damaged. In the case of McKinlay v. Morrish, 21 How. 355, 16 L. Ed. 100, it was claimed that a consignee had no right to sue except for the cargo shipped on his own account. The court held that the consignee had the right to sue for not only what belonged to him, but for that portion also which was shipped to and consigned to him by another person. The point was put on the interest which a consignee has in the consignment as consignee, and not as owner. The court said that, from the nature of the contract of a bill of lading, the consignee had a right to sue in a court of admiralty for any breach of it. In the case of The Thames, 14 Wall. 98, 20 L. Ed. 804, the court held that the holder of a legal right under a bill of lading may assert it by suit, though he may be accountable to another for what he may recover. The case was where a party shipped a lot of cotton by the steamer Thames on bill of lading by which the ship undertook to deliver the cotton shipped to order. The bill of lading was indorsed to · the libelant, in order to transfer to him the cotton as a security for the payment of a draft which was given in payment for the cotton, and which was drawn in favor of Billopp Seaman, cashier, who was cashier of the bank which cashed the draft, and who was the libelant in the case. The ship, on arrival at the port of destination, delivered the cotton to other parties, without the production of a bill of lading, and without any order from the libelant, who was the indorsee of the bill, and to whom alone, or to whose order, the court held it could rightfully be delivered. The court also held that the delivery which was made was a breach of the ship's contract with the shipper, the contract being that which was contained in the bill of lading, and that the ship had no right, under any circumstances, to deliver the cotton to a stranger. The court said it must be considered that by the indorsement of the bill of lading the libelant became the owner of the cotton, and that by force of the contract it was deliverable only to him or to his order. "By the indorsement of the bill of lading, the legal ownership of the cotton passed to libelant, as well as the right to compel its delivery."

In the case now under consideration there were no bills of lading, and hence no transfer of the legal title to the cargoes to the libelant, as consignee. But in the Vaughn & Telegraph Case, supra, it is held that a consignee may sue in a court of admiralty where he has an interest in the cargo. It is conceded that the cargoes in question

were shipped and consigned to the libelant by the Bocas del Toro Banana Company. But it is contended on the part of the vessel that the libelant's interest in the cargoes has been adjusted and ended, and his agency terminated, and that it can no longer bring suit in its own name, as consignee or agent. If it be conceded (which it is not) that the libelant has now the right to bring suit as consignee or agent of the Bocas del Toro Banana Company, it can only recover where that company could recover, and to the same extent, had it brought suit in its own name. That company would have the right to sue and recover any damages sustained from a breach of its contract of shipment, or for any neglect of duty on the part of the vessel growing out of the relation of shipper and carrier. The right to proceed against the vessel in rem does not exist unless the cargo had been delivered to the vessel. This right does not attach until the cargo has been placed within the care and under the control of the ship's master. The Freeman v. Buckingham, 18 How. 182, 15 L. Ed. 341; Vandewater v. Mills, 19 How. 82, 15 L. Ed. 554; The Lady Franklin, 8 Wall. 325, 19 L. Ed. 455; The Keokuk, 9 Wall. 517, 19 L. Ed. 744; The Delaware, 14 Wall. 579, 20 L. Ed. 779.

Damages for any loss of or injury to the bananas after they had been placed on board the vessel and on the voyage to Mobile would be recoverable by the banana company, if such loss or injury was occasioned by a breach of its contract of shipment, or by any neglect of duty to the cargo on the part of the vessel. Such is not the case made by the pleadings and proof here. This suit is based on a breach of the covenants of the charter party, and the principal damage complained of is that which occurred to the bananas before they were taken on board the vessel, and which were sustained, as is alleged, by reason of the delay of the vessel in reaching her loading berth at Bocas del Toro, and her delay in loading after reaching there. My conclusion is that the libelant is not entitled to recover in this suit on the libel as originally filed, and on the evidence, which does not sustain it. and it would be no more entitled to recover if the proposed amendments to the libel were allowed. The motion to amend is therefore denied, and the libel is dismissed.