## THE BANES.

(Circuit Court of Appeals, Second Circuit. February 9, 1915.)

### No. 126.

**1. SHIPPING ⚵⟶53—CHARTER—LIABILITY FOR DAMAGE TO CARGO.**

A time charterer of a vessel, who subchartered her to another, has no right of action against the owner for damage to a cargo owned by the subcharterer.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 214–218, 225; Dec. Dig. ⚵⟶53.]

**2. SHIPPING ⚵⟶56—CHARTER—LIABILITY OF OWNER TO SUBCHARTERER.**

A subcharter of a vessel, even on the same terms as the original charter, does not create any contract relation between the subcharterer and the owner.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 126; Dec. Dig. ⚵⟶56.]

Appeal from the District Court of the United States for the Southern District of New York.

Ralph James M. Bullowa and N. B. Beecher, both of New York City, for appellant.

MacFarland, Taylor & Costello, of New York City (W. U. Taylor, of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. This is an appeal from a decree of the District Court awarding damages to the libelant for breach of a charter party by reason of unseaworthiness.

January 27, 1909, Daniel Bacon, the claimant and managing owner of the steamer Banes, chartered her under the usual government form for a term of seven months in the West India fruit trade to the American Importing & Transportation Company. The charter required the owners to maintain the hull and machinery in a thoroughly efficient state and to maintain the boilers in a condition to bear a working pressure of at least 60 pounds continuously.

The libel alleged that the libelant had subchartered the steamer from

---

⚵⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the American Company; that she left Philadelphia July 7th for Port Antonio, Jamaica, where she should have arrived in due course July 13th; that because of leaking boilers and incompetent officers and crew she did not arrive until the 16th; that it is the custom in the fruit trade to cut bananas before the arrival of the vessel, so that they may be loaded immediately. The fifth, sixth, seventh, and eighth articles of the libel are as follows:

"Fifth. That at the loading ports the libelant's agents had prepared the cargo of fruit for the vessel as aforesaid, which fruit after protest was put aboard upon the assurance of the master that the same would be transported in proper condition; nevertheless, on account of the delay in the arrival of the vessel and the loading of the fruit on board thereof, caused by improper condition of the machinery and the incompetency of the officers and crew as aforesaid, the cargo of fruit, consisting of bananas, was partially spoiled on arrival at New York, so that of the 15,583 stems of bananas laden on board, only 14,323 were able to be sold at any price; the balance of 1,215 stems it being necessary to carry to sea and dump as worthless refuse. The bananas sold realized $6,521.57, whereas in the condition in which the same would have been, had the vessel not been delayed in the manner aforesaid, the same would have been sold for $10,085.70, making a loss of $3,564.13, with interest thereon from the 24th day of July, 1909.

"Sixth. That during all the said time said bananas were owned by the libelant, which is a corporation organized and doing business under the laws of the state of New York, with a chief place of business within the city and county of New York and within this jurisdiction, and during said period the said libelant had subchartered from the said American Importing & Transportation Company, the said steamship Banes under the same terms and conditions that said charterers had chartered the same from these claimants.

"Seventh. That heretofore the said American Importing & Transportation Company duly assigned to the libelant any claim and cause of action which it had by reason of the foregoing, with full power and authority to prosecute the same and collect the proceeds thereof.

"Eighth. That all the terms and conditions of the said charter party have been duly kept and performed by the said American Importing & Transportation Company and by this libelant, but by reason of the breach thereof in the manner above stated this libelant has been damaged in the said sum of three thousand five hundred sixty-four and $13/100$ ($3,564.13) dollars, with interest thereon from the 24th day of July, 1909, which sum has been duly demanded and refused."

The libelant offered in evidence an assignment, dated August 9, 1909, from the American Company to one Caspary, of "all that certain claim and cause of action accruing to the undersigned by reason of damage to cargo of bananas shipped aboard the steamship Banes in July, 1909, under charter party dated 27th day of February, 1909"; also an assignment from Caspary to the libelant of "all that certain claim and cause of action accruing to the undersigned by reason of damage to a cargo of bananas shipped aboard the steamship Banes in July, 1909, under charter party dated 27th day of February, 1909, said claim being assigned to him by the American Importing & Transportation Company by assignment dated August 9, 1909."

The District Judge found the steamer to have been unseaworthy when she left Philadelphia, and because of this he held that the libelant was entitled to recover for damages to the cargo shipped at Jamaica. Conceding that the ship was unseaworthy, that the implied warranty of seaworthiness applied to the voyage in question, notwithstanding that the charter was a time charter, and that there was a cus-

221 F.—27

tom in the trade to cut bananas before arrival of the steamer, which was brought to the knowledge of the claimant, we still do not see how the libelant can recover. The libel asserts various grounds of recovery:

First, that the bananas were laden at Jamaica upon the assurance of the master that the same would be transported in proper condition. The only testimony to support this is that of S. S. Smith of S. S. Smith & Co., the Jamaica agents of the libelant, who said:

"Q. If the vessel had arrived in time and taken this fruit at Port Antonio, allowing a reasonable time to gather fruit at the other ports, would that fruit loaded in Port Antonio have arrived in proper condition in New York? A. Yes; if she had made her time out and back, it would have arrived in splendid condition. * * * Q. Did you exercise all precautions in sorting out fruit that you thought couldn't be carried? A. Yes. Q. And you only loaded fruit which you thought could be carried? A. Yes; and that was the reason my partner went down—to see that we didn't put in fruit that had ripened up. Q. You did everything you could? A. I did everything I could, and cautioned the captain. Q. And he assumed the responsibility? A. He assumed the responsibility for bringing it up, and he said he would bring the fruit up all right."

And that of H. W. Smith of the same firm, who said:

"Q. What conversation was had with the captain about loading the fruit on the vessel in the condition it was in? A. The captain said to load it, and he would see to it that it got into New York; that the ship was a good carrying ship. Q. What was said about somebody assuming responsibility of the condition of the fruit? A. He said he would see that the fruit got into New York all right."

We do not believe the master guaranteed the condition in which the cargo should arrive at New York, or that the libelant's agents loaded on the strength of any such assurance. It is perfectly evident that the only thing to do was to load the cargo. This ground of recovery was not considered by the District Judge, and had no connection whatever with the condition of the steamer on her voyage from New York to Jamaica.

[1] The libel next relied upon the American Company's cause of action, assigned to the libelant by Caspary; but it did not own the cargo, and had no cause of action to assign. The Habil (D. C.) 100 Fed. 120.

[2] Finally, the libel alleged that the libelant subchartered the steamer from the charterers, which the answer denied. A subcharter, even on the same terms as the original charter, would not constitute any contract relation between the subcharterers and the owners. The brief and vague proof on the subject is as follows:

"Q. The charter party was made between Daniel Bacon, general manager of the Cuneo Importing Company, and the American Import & Transportation Company of Boston. Did your company take over this charter party from the American Import & Transportation Company of Boston, Mass.? A. We did. Q. And you operated the steamer on the same terms and conditions mentioned in the charter party? A. We did. Q. Was the interest or any claim in any cause of action accruing to the American Import & Transportation Company assigned to yourself personally? A. It was. Q. From the 9th of August, 1909? A. I don't remember the exact date, but on or about that date. Q. Is this the assignment that I show you? A. Yes, sir. Q. You as-

signed it to the Cuneo Importing Company? A. Yes, sir." (Caspary, fols. 135, 136.)

For negligence in stowing or caring for the cargo on the return voyage the libelant might have had a claim against the steamer; but the only ground relied upon was the late arrival of the steamer at Jamaica, and not anything which occurred on the voyage to New York.

The decree is reversed.