### ACTIESELSKABET DAMPSK. THORBJORN v. HARRISON & CO., Inc., et al.

(District Court, S. D. New York. April 15, 1918.)

1. SHIPPING ⬥49(5)—CHARTER HIRE—LIEN ON CARGO.
    When charter hire is payable at a designated place at a fixed time, there is not any lien against the cargo, unless the charter party expressly so provides.
2. SHIPPING ⬥49(5)—CHARTER—LIEN FOR CHARTER HIRE.
    A provision in a time charter party giving a lien for charter hire on all cargoes and subfreights *held* not to entitle the owner to a lien on a cargo owned by a subcharterer, which had paid the hire under its charter to the original charterer.
3. SHIPPING ⬥49(5)—CHARTERS—LIEN FOR CHARTER HIRE.
    Where a time charterer uses the vessel to carry his own cargo, there is no freight money due the vessel, which can be subjected to a lien reserved in the charter.

In Admiralty. Suit by the Actieselskabet Dampsk. Thorbjorn, as owner of the Norwegian steamship, Thorbjorn, against Harrison &

Co., Incorporated, and a cargo of nitrates on board said steamship, W. R. Grace & Co., claimant, and against certain subcharter hire payable from W. R. Grace & Co. to Harrison & Co., Incorporated. On exceptions to libel. Exceptions sustained.

Haight, Sandford & Smith, of New York City (Wharton Poor, of New York City, of counsel), for libelant.

Kirlin, Woolsey & Hickox, of New York City (John M. Woolsey, of New York City, of counsel), for claimant.

MAYER, District Judge. The claimant, W. R. Grace & Co., has excepted to the libel on the ground that it—

"does not state facts sufficient to constitute a cause of action against the said cargo, for the reason that it does not state that any freight is due or payable by the said cargo on account of its transportation and delivery by the said steamship Thorbjorn."

The libel and a stipulation disclose the facts. On December 8, 1916, libelant, as owner of the Thorbjorn, chartered her for a period of "about six months" (with an option subsequently exercised of one month additional, making seven months in all) from the time of her delivery to Harrison & Co., Incorporated, a corporation. The charter party is in the well-known "time charter government form approved by the New York Produce Exchange."

The charter party provided for payment at the rate of $34,000 per calendar month, if the vessel was delivered at Balboa, where delivery was subsequently made. Payment of hire was to be made in New York semimonthly in advance. The charter party provided, inter alia:

"18, That the owners shall have a lien upon all cargoes, and all subfreights for any amounts due under this charter. * * *"

The date of the steamer's delivery was January 15, 1917. On March 26, 1917, Harrison & Co., subchartered the Thorbjorn to W. R. Grace & Co., a corporation, for two round trips from the United States to the west coast of South America. This charter was also upon the Produce Exchange form, and its provisions were the same as those in the charter between the owners and Harrison & Co., except with regard to the rate of hire, which was fixed at $40,000 per month, payable half-monthly in advance during the period of hiring. In the charter to Grace & Co., Harrison & Co. was described as the chartered owner, and it is alleged in the libel that—

"W. R. Grace & Co. in fact at all times knew that Harrison & Co., Incorporated, was the time charterer of said steamship, and not its owner, and knew, or should have known, the terms of the said original charter party."

Delivery under the charter between Harrison & Co. and Grace & Co., was made at Wilmington, N. C., on April 28, 1917. Two round trips from the United States to the west coast of South America could not be made before about August 15th, which was the date on which the charter party between Harrison & Co. and the owner expired, but that fact is immaterial to the controversy upon this motion.

Redelivery under both charters was to be made at a port in the United States north of Hatteras.

The Thorbjorn and her owner duly performed all the obligations resting upon them. On August 19, 1917, the Thorbjorn sailed from the west coast of South America loaded with a cargo of nitrates belonging to Grace & Co., the charterer from Harrison & Co., which Grace & Co. were carrying for themselves and brought to New York. The Thorbjorn arrived in New York on September 9, 1917, and was redelivered to her owner on September 12, 1917.

Bills of lading were issued for the cargo shipped by Grace & Co. These bills of lading were issued, however, only for insurance and custom house purposes, and in order to enable Grace & Co. to sell the cargo, if so desired, while afloat. There was a clause stamped upon each bill of lading, "Freight as per agreement"; but there was no "agreement." On the other hand, if Grace & Co. had sold the cargo (which they did not), they would have charged the purchaser with freight. It was practically conceded at the oral argument by both sides (and it must follow, whether conceded or not) that these bills of lading do not affect the rights of the parties. They need not, therefore, be further considered.

Grace & Co., instead of paying its hire to Harrison & Co. semimonthly in advance, as it had the right to do under clause 5 of the subcharter, actually paid a full month's hire in advance on July 28, 1917, and this payment was made before Grace & Co. had any notice of any claim by libelant against Harrison & Co.

On August 2, 1917, libelant notified Grace & Co. that hire was due to it from Harrison & Co., and that libelant claimed a lien to the extent of $37,000 on all sums due from Grace & Co. to Harrison & Co. Later, on September 24, 1917, Grace & Co. were further notified by libelant that additional hire due from Harrison & Co. to libelant had not been paid, and that libelant claimed a lien on any amounts due from Grace & Co. on the subcharter in the total sum of $54,000.

The amount actually claimed by libelant was $47,083.44 (plus $78 for overtime), for which it brought its libel against Harrison & Co. in personam and against the cargo of nitrates, the subfreight thereon, and the subcharter hire due from Grace & Co. to Harrison & Co. This amount was made up as follows: (1) $13,083.44 claimed by libelant to have been wrongfully deducted by Harrison & Co. from the hire due libelant; (2) $17,000 for semimonthly hire due August 15th; (3) $17,000 due August 31st.

After receiving the notice of August 2d from libelant, Grace & Co. did not pay any further hire to Harrison & Co., but on September 23d at the request of Harrison & Co., Grace & Co. paid to the proctors for libelant, for account of libelant, the balance of hire due from Grace & Co. to Harrison & Co. under the subcharter.

Thus Grace & Co. have fully paid all hire due under the subcharter, and there is not any question involved as to a balance of subcharter hire due from subcharterer to original charterer. It also appears that there was not any freight paid or payable on delivery of the cargo of

nitrates at New York for which Harrison & Co. or the master of the vessel could have asserted a lien at New York.

The fact that Harrison & Co. is in bankruptcy is the explanation for the effort to hold the nitrate cargo of Grace & Co. for the defaulted hire due from Harrison & Co. to libelant. The question is whether the libelant is entitled to a lien upon the cargo belonging to Grace & Co. for unpaid hire.

Libelant contends for (1) the right to a lien upon the cargo, and, in the alternative, (2) the right to hold the cargo to the extent of a reasonable freight for the carriage of the nitrates from Chile to New York. Claimant meets these contentions on grounds considered infra.

[1] 1. When hire or freight is payable at a designated place at a fixed time, there is not any lien against the cargo, unless the charter party expressly so provides. Such must be the construction of cases like Raymond v. Tyson, 17 How. 53, 15 L. Ed. 47, and The Moringen (D. C.) 98 Fed. 996. While these cases held there was no lien, it is plain that, had the parties expressed themselves as in the charter between libelant and·Harrison & Co. in the case at bar, there would have been a lien. See Raymond v. Tyson, supra, 17 How. at page 68, 15 L. Ed. 47.

[2] The test is always the intent of the parties as gathered from the whole contract. Where, as here, payment was to be in New York at fixed times, but a lien was also provided for, it must be concluded that the lien was an additional safeguard. But there was not any privity of contract between libelant and W. R. Grace & Co. (The Banes, 221 Fed. 416, 137 C. C. A. 214), and therefore W. R. Grace & Co., so far as concerns lien on cargo, were in no different position than would have been an independent shipper, who had paid full freight in advance without notice of the owner's claim against Harrison & Co. The Albert Dumois (D. C.) 54 Fed. 529; Turner v. Taji Goolam, [1904] App. Cas. 826; American Steel Barge Co. v. Chesapeake & C. Coal Agency Co., 115 Fed. 669, 53 C. C. A. 301.

Assuming, for illustration, that W. R. Grace & Co., instead of carrying their own cargo, had carried the cargo of some other shipper, could it be said that such shipper's cargo was subject to a lien for the defaulted charter hire? And yet, because of lack of privity, W. R. Grace & Co. were in no different position. To hold otherwise would be to strike a blow at the orderly and business like conduct of shipping, and would place upon the independent shipper and the subcharterer a risk not contemplated by the parties, nor justified by the reasoning of cases passed on by courts of high authority. W. R. Grace & Co. did not stand in the shoes of Harrison & Co., as is well illustrated by analogy in The Santona (C. C.) 152 Fed. 516, and the lien against the cargo for the charter hire cannot be asserted.

The claim that there is a lien on cargo for time charter hire, where the hire is not contingent on the delivery of any cargo, is opposed to basic and historic principles of the maritime law. The broad general proposition here applicable is thus epitomized in the recent opinion of Judge Hough in The Saturnus (decided April 10, 1918) 250 Fed. 407, 162 C. C. A. 477:

"In respect of carriage of goods in particular, every public benefit has for centuries been deemed obtained when goods were liable for freight, and ship for safe and sound delivery of goods, the mutuality of relation thus growing out of the act of transport, not the making of a contract for transportation. Anything more than this multiplies secret liens and hampers instead of advances ease and freedom of commerce. Merchant and mariner alike subject their property to the municipal law of every country into which their venture comes, but a maritime lien is as near an approach to jus gentium as can be found in private jurisprudence, and any extension thereof not internationally well founded is to be opposed as jealously as is a denial of its accepted extent."

Whatever rights, if any, would have been available to libelant, if charter hire were still due from Grace & Co., to Harrison & Co., or if the money for transported freights were payable to Grace & Co., the facts in this case are that no hire was due and there were no freights.

Grace & Co. could have permitted the vessel to lie idle, or have carried prepaid freights, or, indeed, have made any arrangement it pleased for itself or with independent shippers. In any event, the cargo owner must owe the ship freight when the lien is exercised.

[3] 2. The claim for a reasonable freight is ingenious, and sought to be sustained by analogy with those cases (such as limitations of liability) where a reasonable freight is allowed under certain circumstances; but the same principles apply as are noted supra. But, in addition, Grace & Co. had a perfect right to carry its own cargo. It was not obligated to create freight moneys, and a lien could not spring into existence unless the cargo was bound to the vessel in the sense that the cargo owed the vessel freight money on freight delivery at the port of destination.

· Any other conclusion, to repeat, would subject a subcharterer such as this to obligations never contemplated, and would introduce a commercial risk not intended when libelant made its time charter and placed Harrison & Co. in the position of freely contracting, as it did, when it made its subcharter to Grace & Co.

Exceptions sustained.