## DAMPSKIBS AKTIESELSKABET THOR v. TROPICAL FRUIT CO. et al.

(Circuit Court of Appeals, Second Circuit. May 1, 1922.)

No. 281.

1. **Admiralty ⬤⟳70—All parties brought before court, and controversy determined on merits, regardless of technicalities of pleadings.**

   It is the practice in admiralty to bring all parties before the court and to determine the controversy on the merits as it appears from the proof, regardless of technicalities of pleadings, provided that no party is surprised or injured by such equitable proceeding.

2. **Shipping ⬤⟳40—Charterer, who failed to redeliver when vessel was in port of redelivery within few hours of termination of charter period, held liable for current rates for use of vessel during other voyage.**

   Where charter for "about three years" permitted redelivery of steamer "at a port in the United States, Atlantic, or Gulf of Mexico," the charterer was required to redeliver the vessel when in a port of redelivery within a few hours of the termination of the flat period, with no possibility of making a further reasonable voyage under cover of the overlap or the "about," and where subcharterer made another voyage from such port, terminating at a port north of Hatteras, 13 days after termination of flat period, the charterer was liable to owner for use of vessel at the current and not the charter rates, notwithstanding provision of subcharter for redelivery at a port in the United States, "Atlantic north of Hatteras," and the fact that both the charterer and broker who had made the charter and collected hire thereunder believed that the charter would not expire until arrival at a port north of Hatteras.

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Contracts ⊜⟳93(4)—"Mistake of law" defined.**

A "mistake of law" arises when persons having full knowledge of the facts come to an erroneous conclusion as to their legal effect.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Mistake of Law.]

**4. Shipping ⊜⟳56—Owner not entitled to recover against subcharterer for charterer's failure to redeliver on termination of charter period.**

Owner, suing for failure of charterer to redeliver at termination of charter period, could not recover against subcharterer; there being no contract relations between subcharterer and owner.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in admiralty by the Dampskibs Aktieselskabet Thor against the Tropical Fruit Company, in which the Atlantic Fruit Company was brought in as a party defendant. From the judgment rendered, the defendant Tropical Fruit Company appeals. Decree modified, and cause remanded, with instructions.

Libelant sues as owner of the Norwegian steamer Catherine Cuneo, and upon a charter party for that steamer, executed during December, 1914, at New York City. By this charter party respondent Tropical Fruit Company took the vessel for "about three years," dating from delivery to charterers—an event which occurred May 11, 1915; consequently that charter was to expire "about" May 11, 1918. This three-year charter permitted redelivery of the steamer to be made "at a port in the United States, Atlantic, or Gulf of Mexico."

The Tropical Company exercised its right of subchartering, and in March, 1917, did subcharter the Cuneo to respondent Atlantic Fruit Company for the unexpired period "under steamer's original charter" between Tropical Fruit Company and owners dated December 7, 1914—"say about fourteen consecutive calendar months." This subcharter, however, provided for redelivery "to owners (unless lost) at a port in the United States—Atlantic north of Hatteras."

In April, 1918, the owners, through agents in New York acting under special cable authority, executed and delivered to the Atlantic Fruit Company a direct charter of the Cuneo for a period of three months beginning at "expiration of present charter, at port said charter expires." On May 10, 1918, the Cuneo was at New Orleans, empty, and actually in the employment of the Atlantic Company; at the direction of said Atlantic Company, the Cuneo (whose master received in New Orleans a copy of the three-months charter) sailed for Cuba, there loaded a cargo of fruit, took the same to New York, and arrived in that port, completing discharge on May 24, 1918.

The market rate for such vessels as the Cuneo having greatly advanced over that of the original three-year charter, the Norwegian owners brought this suit to recover for the period May 11–May 24, 1918, at the market rate from Tropical Fruit Company; thereupon Tropical brought in, under the then fifty-ninth rule, Atlantic Company, alleging that, if there was any failure to redeliver under the three-year charter party, it was the fault of Atlantic. The special and more important facts will be stated in the opinion.

The District Court directed that the additional hire prayed for in the libel be recovered "in the first instance against Tropical Fruit Company," and that Atlantic Fruit Company should be responsible only for such balance as might not be collectible from the corporation primarily liable, whereupon Tropical Fruit Company took this appeal.

Ralph J. M. Bullowa, of New York City, for appellant.

Haight, Smith, Griffin & Deming, of New York City (Henry M. Hewitt, of New York City, of counsel), for libelant.

⊜⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Hunt, Hill & Betts, of New York City (George Whitefield Betts, Jr., of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The pleadings herein are singular, in that, after Atlantic Company had been impleaded under the former fifty-ninth rule (29 Sup. Ct. xlvi), an amended libel was filed against both that company and Tropical Company as respondents; such amendment quite changing the theory of recovery. It is not necessary to pick and choose between the various schemes of law presented by the pleadings. It is sufficient to apply the doctrine of The Volunteer, 149 Fed. 723, 79 C. C. A. 429, viz. that it is the practice in admiralty to bring all parties before the court, and to determine the controversy on the merits as it appears from the proof, regardless of technicalities of pleadings—always assuming (as may be done here) that no party is surprised or injured by that equitable proceeding.

From a business standpoint this case inquires: What rate of compensation should have been paid for the use of the Cuneo between May 11 and 24? Was it the rate of the three-year charter, or the current rate? There is the further question: Who should pay such rate when fixed? The practical reason for the bungling out of which the litigation grew was that one broker (Hellieson) had made the three-year charter and collected hire thereunder. There had been changes in the ownership of the Cuneo, and the three-months charter was made by another broker (Bennett), and while Bennett knew of the three-year charter, Hellieson knew nothing of the three-months charter, and the owners were in Norway.

A question of law, however, lies at the bottom of the matter, viz.: Did or did not the three-year charter expire on May 10, 1918—a day when the Cuneo was lying empty in a port of redelivery under that document? Since that charter period was "about three years," the legal query must be answered in accordance with the principles (the exact question has not heretofore arisen) of Munson v. Elswick (D. C.) 207 Fed. 984, affirmed 214 Fed. 84, 130 C. C. A. 612, Prebensens Dampskibsselskabet v. Munson, 258 Fed. 227, 169 C. C. A. 295, and Schoonmaker-Conners v. Lambert (C. C. A.) 269 Fed. 583, and cases there referred to. The rule there laid down, and succinctly stated in 214 Fed. at page 85, 130 C. C. A. 612, is that if the overlapping voyage be reasonable it is compulsory; but if the time remaining when in a redelivery port is so short that no reasonable voyage can be undertaken under cover of the overlap, the charterer may redeliver or the owner may withdraw; yet it depends upon the language of the charter party whether such redelivery is a privilege conferred by the owner on the charter, or a contractual obligation of the charterer to the owner.

[2] This three-year charter plainly imports a contractual obligation on the charterer (Tropical Company) to redeliver, and that obligation became effective and binding when the Cuneo was in a port of redelivery within a few hours of the termination of the flat period, and with no possibility of making a further reasonable voyage under cover

of the overlap or the "about." We hold, therefore, as matter of law that the three-year charter terminated at New Orleans, and further that the act of Tropical Company in fixing another delivery port (i. e.; one north of Hatteras) in its subcharter did not and could not vary its pre-existing obligation to the Cuneo's owners.

The fact is proven that Tropical Company, knowing the steamer to be at New Orleans, and making no inquiry as to whether she was there to completely unload, represented to Hellieson (in substance) that owing to its subcharter to Atlantic Company it would not be ready to redeliver the steamer under the three-year charter until the vessel arrived in New York, and Hellieson acquiesced in this suggestion, and apparently expected (though the evidence is confused) to receive no more for the period from May 11 until arrival in New York (May 24) than at the rate of the three-year charter. The most favorable view of this matter for Tropical Company is that the actors both for that company and for Hellieson were laboring under a mistake of law, and believed that a charter for "about three years" would not expire until the Cuneo arrived at a port north of Hatteras; i. e., New York.

[3] A mistake of law arises when persons having full knowledge of the facts come to an erroneous conclusion as to their legal effect. But no estoppel can be grounded merely on such mistake. 21 Corp. Jur. 1126. And if Hellieson had extended, or be thought to have tried to extend, the three-year charter at the old rate, or any rate, the evidence is clear that he was entirely without authority so to do. Whether an estoppel could have arisen, had any party pleading estoppel been led by this mistake of law to change his position for the worse, is a question not presented by this record. Tropical Company wanted to bring the steamer to New York, in order to get as much as possible out of its profitable subcharter to Atlantic Company. This it did, and by so doing as matter of law used the Cuneo beyond the charter period, viz. from May 11 to May 24, and therefore it is obliged to pay for that breach of charter damages measured by the current rate of hire. Atlantic Fruit Co. v. A Cargo of Sugar, 249 Fed. 871, 162 C. C. A. 105.

The decree below is not complained of as to amount, and we assume that the current rate has been awarded. The bungling above alluded to resulted in the new brokers for the ship acquiescing in the erroneous interpretation of the charter put forward by Tropical Company, and the three-months charter to Atlantic Company was treated as becoming effective May 24th. Thus, by an erroneous construction of the three-year charter on the part of Hellieson and Tropical Company, and without the knowledge of libelant, Tropical Company profitably enjoyed the ship for about a fortnight without right; for that enjoyment it must pay, and pay at substantially the same rate as it did itself collect. But it does not pay because it collected, nor what it collected; the fact of profitable collection is only mentioned to show that it never changed its position for the worse in any respect.

[4] With this use by breach of charter party the Atlantic Company had no concern. Contractually there was no relation between the subcharterer and the owner (The Banes, 221 Fed. 416, 137 C. C. A. 214); this action is for breach of the three-year charter. Therefore no rea-

son appears for asserting any liability, immediate or contingent, against Atlantic Company.

As that company did not appeal, it can recover no costs in this court; but the decree below is modified, by striking therefrom the words relating to possible or ultimate recovery from Atlantic Company and the cause remanded, with directions to dismiss the amended libel as against Atlantic Company, with costs to that company as against the libelant.