### ACME OPERATING CORPORATION v. UNITED STATES.

(District Court, D. Maryland.   June 30, 1922.)

No. 800.

Shipping ⇐⇒49(5)—Contract lien binds only other party to contract and its interest.

The contract purchaser of a ship from the United States Shipping Board chartered the same, and the charterer executed a subcharter to libelant, which had knowledge of the facts and the title under which the ship was held. The Shipping Board retook the vessel for nonpayment of purchase money. *Held,* that a lien on the vessel given libelant by the subcharter for hire advanced and not earned bound only the other party to the contract and its property, and that the lien was not effective as against the Shipping Board.

In Admiralty. Suit by the Acme Operating Corporation against the United States. Decree for the United States.

A. C. Cass, of New York City, and Welsh & Preece and George Forbes, all of Baltimore, Md., for libelant.

Robert R. Carman, U. S. Atty., of Baltimore, Md.

ROSE, District Judge. The libelant is a subcharterer from a firm which, in its turn, had chartered the steamship Gunston Hall from a

corporation which was operating the ship for another company, which had possession of the ship as an agreed purchaser from the Shipping Board. It paid in advance a large sum as charter hire to its immediate charterer, under an agreement by which a proportionate amount of the money so paid should be returned, if the voyage did not last so long as expected. It claims that it is entitled to get back about $100,000. The Shipping Board has repossessed itself of the ship because of the default of the purchaser in its payments. As everybody concerned is now insolvent, except the Shipping Board, which has the United States treasury to draw upon, the libelant asserts that it has against the ship a lien in rem, which it is trying to make available by suing the Shipping Board under the Suits in Admiralty Act.

It says that the ship was bound to it because its owner knew that the agreed purchaser intended to charter the vessel, and another one of its agents, known as the "chartering executive," had actual notice of the charter to the original charterer, which gave permission to subcharter. The libelant argues that the owner thereby assented to the making of a subcharter upon any usual and customary terms. The charter and the subcharter were on the well-known "government produce form." Each contained clause 18, which in the same or slightly different language is also found in other forms of charter habitually used. It provides that:

"The owner shall have a lien upon all cargoes and all subfreights for any · amount due under this charter, and the charterer is to have a lien on the ship for all sums paid in advance and not earned, and any overpaid hire or excess deposit to be returned at once."

The libelant argues that all this amounted to a permission by the owner to the charterer to impose upon the ship a lien for unearned freight paid in advance. It has been for many years usual to incorporate in charter parties a provision in effect identical with those of the clause in question, and yet it does not appear that there is any reported case in which such a claim as is here asserted has been made, in spite of the fact that in the last two or three years, at least, there have been many times when subcharterers must have badly wanted to do so. The lien for which the subcharterer bargained was one which had its origin in agreement, and is not one which the law itself creates. The Saturnus, 250 Fed. 407, 162 C. C. A. 477, 8 A. L. R. 1187. The general rule would seem to be that such contracts bind the parties and their property, and no one else. The Banes, 221 Fed. 416, 137 C. C. A. 214.

There is no public policy which requires that a charterer shall have a right to subject a ship which does not belong to him to liability for the payment of hire which he has collected in advance, as there is for the mutual obligations of the ship and cargo; nor would there appear to be any more substance in the libelant's claim that the owner assented either actually or constructively to the ship being bound to the libelant in the manner described, or did anything to estop it from denying that it did so. The owner never saw the subcharter, and the original charter itself was not shown to it until weeks after the ship had sailed under the recharter. The libelant itself, at the time it put up the money, was well aware that the ship had not been fully paid for, and that the owner would not let it sail until certain installments had been given it,

and that the money it advanced was used to make such payments. Under such conditions, there is no presumption that the owner ever supposed it was giving to the charterer from the agreed purchaser the right to bind the owner, through the ship, to return some part of that money.

The libelant makes claim for two other sums. It had purchased and put on board the ship a large quantity of fuel oil, a considerable portion of which was still in her tanks at the time the firm from which it chartered her had repossessed itself of the ship. The subcharter provided that, at its expiration, any fuel belonging to the subcharterer, then on board, should be paid for at the current market price. The libelant had also made certain advances to the same firm to pay for stevedoring services at Bordeaux. For both of them it has its claim against that firm, but for neither can it hold the ship.

It follows that the libel must be dismissed.