**THE NORTHERN NO. 29.**

**FLAT–TOP FUEL CO., Inc., v. MARTIN.**

No. 14163.

District Court, E. D. New York.

Jan. 2, 1936.

On Reargument Feb. 24, 1936.

Hill, Rivkins & Middleton, of New York City (Thomas H. Middleton, of New York City, of counsel), for libelant.

Lynch & Hagen, of New York City (Horace T. Atkins, of New York City, of counsel), for respondent.

INCH, District Judge.

Libelant owned a cargo of coal, consisting of approximately 2,000 tons, which was being transported by the barge Northern No. 29 when the said barge, owned by the respondent, Martin, sank at sea off the Jersey coast. Both the barge and the coal were a total loss.

The libel contains two causes of action, both in personam. One is based on a contract based on failure to perform an alleged contract for carriage of the coal by respondent from Norfolk to Connecticut in consideration of agreed freight. The other cause of action is apparently in tort whereby the loss of the barge is claimed to be due to the negligence of the respondent in that the barge was unseaworthy and her equipment defective.

It is necessary to briefly set forth the undisputed facts surrounding the use of this boat and her unfortunate and uncompleted voyage.

The barge Northern No. 29 was about sixteen years old. She belonged to the respondent. She had originally belonged to the Northern Barge Corporation of which L. B. Tucker was president and was a witness at the trial. This corporation owned and operated her from the time she was built until November, 1932. She was then sold to respondent. In June, 1933, she was chartered by respondent to the Marine Fuel Corporation, and it subchartered the barge to libelant for the freighting of 35,-000 gross tons of coal by sea during the period from June 5, 1933, to April 1, 1934.

Pursuant to this subcharter with the Marine Fuel Corporation, the barge had already made several voyages, loaded with coal, from Virginia to Connecticut and elsewhere. Freight for these prior shipments had been paid by libelant to the Marine Fuel Corporation at 70 cents per ton. The Marine Corporation in due course had paid respondent 67½ cents per ton pursuant to its contract.

█ The contract between libelant and the Marine Company contained a provision that the owner should be exonerated from loss or damage to cargo occasioned by defects, etc., provided all reasonable means had been taken by the owner to make the barge seaworthy. The original charter also contained such clause. The barge was a private carrier, and so provisions of the Harter Act, 46 U.S.C.A. §§ 190–195, are not applicable. The G. R. Crowe (C.C.A.) 294 F. 506.

█ Respondent was not a party to the contract between libelant and the Marine Company. The Banes (C.C.A.) 221 F. 416; Dampskibs Aktieselskabet Thor v. Tropical Fruit Co. (C.C.A.) 281 F. 740. Phosphate Mining Co. v. Unione, etc. (C.C.A.) 3 F.(2d) 239; Murphy v. Paine (D.C.) 15 F.(2d) 570. The suit is in personam.

██ When the coal was loaded upon the barge at the beginning of the voyage, a bill of lading prepared by libelant was signed by a representative of respondent. This made no reference to the contract between libelant and the Marine Company. It was properly admitted in evidence as part of the proof by libelant as to the circumstances surrounding the shipment, but, as libelant was the shipper as well as a charterer, this bill of lading unnegotiated was merely a receipt. The Fri (C.C.A.) 154 F. 333; The G. R. Crowe (C.C.A.) 294 F. 506; The William I. McIlroy (D.C.) 37 F.(2d) 909, affirmed Burns Bros. v. The William I. McIlroy (C.C.A.) 45 F.(2d) 1023.

There can be no recovery here on contract under such circumstances.

█ However, the respondent owed a duty to have the barge a seaworthy one when she broke ground, and there was a presumption of a breach of this duty by respondent as shown by the facts surrounding the sinking of this barge and the failure to deliver the coal. The William I. McIlroy, supra. These facts are as follows: She was loaded on or about December 5 with less than a capacity load of coal. Nevertheless she soon leaked to some extent, and, when she started on her voyage December 7, in tow with several other barges, on her way to Connecticut, she had only reached a point off the Jersey shore when it was found by her captain that she was leaking so badly as to require her being cut out from the tow and brought into quieter waters, where she soon sank and was a complete loss.

The respondent does not plead peril of the sea, but insists that the barge was seaworthy when she started, as shown by a certificate issued by the hull inspector on December 4, and by the testimony of the president of her former owner, and from the various times she had been in dry dock for repairs, coupled with the testimony of her master. That the sea encountered shortly before her unfortunate ending was quite rough and a wind was blowing.

Nevertheless, what this barge did speaks louder than this testimony on the question of her seaworthiness. There was nothing unusual about the sea which an ordinarily staunch and seaworthy barge would not be expected to meet. Apparently the other barges met such conditions. Her master showed the necessity for frequent pumping, and the inspector did not examine her when she was loaded with coal but was empty.

In my opinion, the warranty of seaworthiness which rested on the respondent has been sufficiently shown by libelant to have been broken.

In other words, this barge was unseaworthy when she broke ground, as there is no sufficient proof that any other cause for her sinking arose between that time and her sinking.

█ Under such circumstances libelant is entitled to recover from respondent. Work v. Leathers, 97 U.S. 379, 24 L.Ed. 1012; The Turret Crown (C.C.A.) 297 F. 766; Benner Line v. Pendleton (C.C.A.) 217 F. 497, affirmed 246 U.S. 353, 38 S.Ct. 330, 62 L.Ed. 770. This is so whether the carrier is a common or a private carrier, The Framlington Court (C.C.A.) 69 F.(2d) 300, the Caledonia, 157 U.S. 124, 15 S.Ct. 537, 39 L.Ed. 644, in the absence of an express contract between the parties.

Respondent further claims that, in case libelant succeeds, it is entitled to limit lia-

bility which in this case relates to the total loss of the barge.

But, as I find the barge was unseaworthy when she broke ground, respondent is not entitled to such limitation. Cullen Fuel Co. v. Hedger, 290 U.S. 82, 54 S.Ct. 10, 78 L.Ed. 189, affirming The Cullen No. 32 (C.C.A.) 62 F.(2d) 68.

Decree for libelant.

If this opinion is not considered a sufficient compliance with the rule 46½ of the Rules in Admiralty (28 U.S.C.A. following section 723), findings of fact and conclusions of law in accordance herewith may be submitted.

### On Motion for Reargument.

Respondent moves for a reargument.

By its decision the court refused to sustain the defense interposed by respondent as to his right to limit liability.

The libelant was allowed to recover against respondent for the loss of a cargo of coal which sank with the barge Northern No. 29, in the Atlantic Ocean, at a place opposite a point in New Jersey, while the barge was being towed from Norfolk to Connecticut. Both the barge and the coal were total losses. The respondent owned the barge. The libelant owned the coal.

There was no contract between respondent and libelant. Respondent had chartered the barge, for a consideration, to a third party, who, in turn, had subchartered it to libelant, and the latter had the coal loaded on the barge at Norfolk, and respondent there gave a receipt for the coal to libelant, in the form of a bill of lading prepared by libelant, and signed by the duly authorized representative of respondent.

Shortly after the barge was loaded and without proof that the loading was excessive or not properly carried out, and while the barge was being towed at sea with no untoward weather or water conditions, the barge gave up and sank. The court found that the barge was unseaworthy when she broke ground. The court likewise held that, in the circumstances, respondent was not entitled to limit its liability, and cited the recent case of Cullen Fuel Co., Inc., v. W. E. Hedger, Inc., 290 U.S. 82, 54 S.Ct. 10, 78 L.Ed. 189.

Respondent has asked for this reargument on the ground that refusal of this right was error, and urges that the aforesaid authority is not in point, for the reason that in said suit there was a contract between the parties while there was none here.

This motion for reargument is now denied for the following reasons: ·

The Cullen Case, to be sure, was a suit where a contract existed, while none exists here. But that case cited a number of other cases, from all of which it would seem that the theory applicable to this case is made sufficiently clear without the necessity for further citation.

It has been said: "The liability which the Act of Congress designs to limit is that which the law imputes to the ship owner by reason of his relation to the ship, her master and crew, not that liability which he voluntarily assumes by express contract. It is the liability imposed by law. * * *" Section 476, p. 567, vol. 1, Benedict on Admiralty (5th Ed., McCloskey).

The liability, therefore, of respondent is that imposed by law either with or without the presence of a contract.

Thus the Supreme Court in Capitol Transp. Co. v. Cambria Steel Co., 249 U.S. 334, 39 S.Ct. 292, 63 L.Ed. 631 (a case mentioned in the Cullen Case), fairly indicates that the liability may arise outside of a contract and states "in addition" a finding of the presence of contract.

Where the respondent "expressly" warrants the seaworthiness, the Capitol Case justifies a refusal of this right. Where an "implied" warranty arises from the circumstances and the subject matter of the contract, the Cullen Case justifies such refusal, on condition that such implied warranty is limited to the fitness of the ship at the time of breaking ground.

I confess that the point now raised by respondent is important and not free from doubt. But it seems to me that the plain tendency of the cases cited above, together with the theory of the liability which the right affects, seems to me to indicate a refusal in this suit to be proper.

One must be careful to consider the warning of Mr. Justice Holmes that there is "danger that the act should be cut down from its intended effect by too easy a finding of privity or knowledge on the part of owners." Capitol Transp. Co. v. Cambria Steel Co., supra, 249 U.S. 334, at page 336, 39 S.Ct. 292, 63 L.Ed. 631. But this does not refer to the liability which is to

be limited. It rather refers, it seems to me, to the right to limit.

Here an owner of a seagoing barge consents to allow his barge to be loaded with a valuable cargo by libelant without comment or protest as to her condition at a time when she is so unseaworthy that she thereafter sinks shortly after breaking ground. Certainly the law imposes a duty on such owner to use reasonable care to protect such owner of the cargo as to the seaworthiness of such barge at such time by such means as ordinary prudence would suggest in the circumstances, and for failure to use such care a liability is imposed by law independent of a contract.

The sole question remaining would be whether there was privity or knowledge of such unseaworthiness on the part of the owner at the time the barge broke ground.

There is no necessity for defining these terms. See article of John E. Purdy on "Recent Amendment to the Maritime Limitation of Liability Statute," Brooklyn Law Review, vol. 5, No. 1, October, 1935.

In The Republic, 61 F. 109, cited by Mr. Purdy, Judge Wallace of the Circuit Court of Appeals found that knowledge or privity of the owner would arise from his personal neglect to inform himself of the defective condition of his vessel.

In the case at bar the court has found that the barge was unseaworthy when she broke ground. It seems to be the only proper conclusion from the circumstances. Such unseaworthiness would preclude limitation if it existed with the owners' privity or knowledge. The Galileo (C.C.A.) 54 F.(2d) 913, affirmed Earle & Stoddart v. Ellerman's Wilson Line, 286 U.S. 535, 52 S.Ct. 498, 76 L.Ed. 1275.

The testimony as to this owner's privity or knowledge is confined to a stipulation duly offered by respondent and received in evidence covering respondent's testimony.

This consists, in substance, that respondent then knew of no defect in the barge and that he was "ready, willing and able" to make such repairs and replacements as might be necessary. As against this mental condition, we have the physical facts that the barge was in such a condition when she broke ground that she sank shortly after her trip commenced with no unusual load, wind, or water condition, and that respondent's duly authorized representative was present when she was load-ed and was in a position to know the actual condition of the barge.

To be sure, there had been an examination of the barge while she was light, but as to this see The Cullen No. 32 (D.C.) 45 F.(2d) 859, affirmed (C.C.A.) 62 F.(2d) 68.

In the circumstances here, affirmative action was called for. This does not appear to have been taken.

Libelant is correct when it asserts that, when the respondent offered his barge to be so used, he was bound to see that she was seaworthy when she broke ground. Work v. Leathers, 97 U.S. 379, 24 L.Ed. 1012.

Accordingly, it is my opinion, limited to the facts in this suit, and the time of breaking ground by the barge, that the right to limit liability on the part of the respondent was properly denied.

Motion denied.