WALSH et al. v. TWEEDIE TRADING CO.

THE HERM.

(Circuit Court of Appeals, Second Circuit. April 13, 1909.)

Nos. 234, 235.

SHIPPING (§ 46*)—CHARTER PARTY—CONSTRUCTION—OPTIONAL EMPLOYMENT OF
VESSEL.

A charter of a steamship "for one round trip to west coast of South
America. Charterers have the option of employing the steamer in general
trade for the period of about three months up to five months, but in any
event not to exceed five months"—gave the charterers the option of a
round trip to the west coast without limitation of time, or of using the
vessel in general trade not to exceed five months, and their use of her in
such trade for some three months was an election, and they were not then
entitled to send her to the west coast, which would require a longer time
than five months in all.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 171–176; Dec.
Dig. § 46.*]

Appeals from the District Court of the United States for the Southern District of New York.

For opinion below, see 152 Fed. 276.

The decree in the first suit awarded to the agents of owners of the steamship Herm balance claimed to be due for hire of the steamer. The decree in the second suit dismissed the libel of the charterer, Tweedie Trading Company, brought to recover damages for alleged breach of charter party. The appellant does not dispute the amount of hire decreed, but denies its liability therefor. The opinion of the District Judge is found in 152 Fed. 276.

R. J. M. Bullowa, for appellant.
J. Parker Kirlin and Russell T. Mount, for appellees.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). The
questions raised by these appeals deal with the construction of a charter party and its application, as construed, to the facts of the case.
The charter party is, as usual, a printed form, with blanks which have
been filled in to express the intentions of the parties. After a recital
of the names of the parties and a description of the vessel, the charter
party—

"witnesseth, that the said owners agree to let and the said charterers agree to
hire the said steamship from the time of delivery *for one round trip to west
coast of South America.* Steamer to be placed at the disposal of the charterers at a port in U. S. north of Hatteras or Savannah or Fernandina at charterers' option, in such dock or at such wharf * * * as the charterers may
direct [here follow the usual provisions as to readiness to receive cargo, seaworthiness, complement of officers and crew], to be employed in carrying lawful merchandise * * * between safe port and/or ports in British North
America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean and/or Gulf of Mexico, and/or South America,
and/or Europe, and/or Africa, and/or Asia, and/or Australia, excluding River
St. Lawrence from Oct. 1st to May 1st * * * and all unsafe ports, as charterers or their agents shall direct."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The words italicized above are typewritten in a blank space. There is also at the foot of the document, just before signatures, another typewritten clause dealing with the employment of the vessel. Counsel for owners suggests that it was placed there because there was no room for it in the earlier blank, and that it should be transposed to the place where it properly belongs. This seems reasonable, and will bring the provisions as to employment of the vessel into juxtaposition in the same paragraph. When this is done the paragraph after the words "from time of delivery" reads:

"For one round trip to west coast of South America. Charterers have the option of employing the steamer in general trade for the period of about three (3) months, up to five (5) months, but in any event time not to exceed 5 months, subject, of course, to stranding, sinking, stress of weather or other accidents. Steamer to be placed at the disposal of the charterers, etc. [as above quoted]."

Counsel for owners contends that the "but in any event time not to exceed 5 months" qualifies both the optional employments—the round trip to west coast, as well as the general trading. We are of the opinion, however, that this time limit refers only to the employment in general trade. The vessel was delivered to charterer at New York July 12, 1905. Some cargo was there taken aboard, and she proceeded to Fernandina, where loading was completed. She sailed July 30th for Pernambuco, where she discharged part of her cargo, proceeded to Rio, where other cargo was discharged, and thence to Santos, where discharge was completed on September 20th. She lay idle there for about 12 days until, on October 3d and 4th, certain telegrams, which will be hereinafter referred to, were exchanged between the parties. Thereupon she left Santos October 5th for Pernambuco for orders, and under them proceeded to Barbadoes. Her subsequent movements need not be recited. They were subsequently adjusted.

The clause of the charter quoted supra provides for two different employments of the ship and gives the charterers the option which they will select. She may be sent on one round trip to the west coast of South America, or she may be employed in general trade (between the ports specified in a long enumeration) for a time not to exceed five months. There is no special requirement as to the manner in which such option shall be exercised and the owners notified of the choice made. No written notice is called for, nor must notice necessarily be given before sailing. When, therefore, the question is presented, Which of these two different employments did the charterers select? the answer must be found in what was done under the charter. The vessel loaded with no cargo for the west coast. She carried cargo only for several ports on the east coast, and her movements down to the time controversy arose had been confined to trade between ports in the United States and ports on that coast. At the very moment when controversy did arise, as the president of the charterer testified, he had in contemplation to send her to Africa, and thence to India, and thence home with oil.

Some evidence was put in by the charterer to the effect that under a charter for "one round trip to west coast of South America" there is a custom which gives the charterer the right to call at intermediate ports to load or discharge cargo. Cross-examination, however, left

this evidence quite unpersuasive. The vessel finding, at Santos, no cargo offering which she could have taken and carried under the general trading option within the time limit specified in the charter—nearly three months had then expired—the charterer cabled on October 3d to owners' agents:

"Will you allow two months continuation of present charter £100 extra per month failing this Tweedie considering west coast South America voyage."

To which they replied October 4th:

"Owners agree to not exceeding two months continuation £200 extra per month whole period present charter and continuation difference failing this they protest keeping Herm over five months as per charter party therefore west coast South America voyage impossible."

The owners apparently construed the charter party as applying the five-months limit to the west coast voyage. In that they were in error. But it was with them to say whether or not they would give any extension for general trading, and, if so, on what terms. Upon the evidence we are satisfied that, long before the cable of October 3d was sent, the charterer had elected to employ the vessel in general trading, had actually so employed her, and was contemplating a continuance of such employment. The cablegram of October 3d indicates this clearly. It shows that the charterer did not construe the time limit as applying to the west coast voyage, for it says, "Failing this"—i. e. an extension—it was contemplated to send her to the west coast. Nevertheless an extension of time is asked for, which would be needed only in case the vessel were being employed in general trading. Having once exercised its option, and employed the vessel in general trading, the charterer could not, when conditions at Santos rendered that employment unprofitable, except upon an extension for a considerably longer period, adopt the other alternative and insist that the vessel should then be sent to the west coast.

The decrees are affirmed, with interest in the first cause and a single bill of costs of appeal for both causes.