### SCHOONMAKER–CONNERS CO., Inc., v. LAMBERT TRANSP. CO.

(Circuit Court of Appeals, Second Circuit. November 17, 1920.)

No. 42.

1. **Shipping ☞40—Term of time charter of lighters not extended by their unavoidable detention.**
   Where lighters were chartered in December for one month for use in and about New York Harbor, the fact that at the end of the month some of them were in Passaic river, where they were held for several weeks by ice, *held* not to operate to extend the charter term, in the absence of any provision therefor in the contract or any custom to that effect.

2. **Shipping ☞58(3)—Damages for detention beyond term of time charter.**
   Notification by the owner of chartered lighters, at the end of the charter term, that a higher rate of hire would be charged thereafter, *held* not to make such rate the measure of damages for their unavoidable detention, where not agreed to by the charterer.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Schoonmaker-Conners Company, Incorporated, against the Lambert Transportation Company. Decree for respondent, and libelant appeals. Reversed, and cause remanded.

On December 4, 1917, the Schoonmaker Company chartered to Lambert Company two lighters. The agreement was in writing and declared that the charter was "for the term of one month, * * * time to commence December 3, 1917." It further provided that "these lighters, when light, will be returned to us in the towing limits of New York Harbor." On December 6, two other lighters were the subject of a similar written charter agreement. The language of this second agreement was identical with the first, except that charter time was to begin December 7, 1917. On December 29, 1917, Schoonmaker Company advised Lambert Company that on the expiration of the charter parties in question the lighters would be required in Schoonmaker's own work and therefore they must be returned. On January 4, 1918, none of the lighters having been returned, Schoonmaker Company wrote to Lambert Company that after the expiration of the stipulated period of one month the rate of compensation would be materially raised.

On receiving all four lighters, Lambert Company had subchartered them, and the subcharterer actually used them in the transportation of goods. The winter of 1917–1918 was, if not the most severe, as severe as any since 1815, when weather records began to be kept at Governor's Island, New York Harbor. At and shortly before the expiration of the charter period three of the lighters were lying loaded and awaiting discharge at a wharf on the Passaic river, egress from which was possible only by passage through Newark· Bay, and both that bay and the river were frozen to such depth that navigation ceased for upwards of a month after the expiration of the charter period.

The fourth lighter was at the same time at a pier in Brooklyn in the possession of the subcharterer, and laden with the subcharterer's goods apparently destined for the Passaic river, access to which was impossible for the reasons above stated. It does not appear that there existed any physical impediment to the unlading of this fourth lighter where she lay, nor although it is said that New York Harbor "was in a terrible condition with ice that year," is it proven that harbor navigation was not going on.

Lambert Company did not return any of these chartered boats until February 18, and one of them was retained until March 6, 1918. February 18 was approximately the date when navigation of Newark Bay and the lower Passaic was resumed as a result of work with dynamite and by icebreakers. No reason appears why any lighter should have been kept as late as March 6, and none why the fourth lighter should have been kept until February 18, except that she was laden with subcharterer's cargo, and was kept by that charterer for his own purposes.

Lambert Company having refused to pay the advance rate demanded by Schoonmaker Company, this libel was brought to recover the same. Respondent admitted liability for, and asserted willingness to pay, the charter rate during the entire period of detention. The trial court dismissed the libel; libelant appeals.

Macklin, Brown, Purdy & Van Wyck, of New York City (Pierre M. Brown, of New York City, of counsel), for appellant.

Foley & Martin, of New York City (George V. A. McCloskey, of New York City, of counsel), for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] It is urged that the facts presented bring this cause within what are generally known as the "underlap and overlap" decisions relating to charter parties (Prebensons v. Munson, 258 Fed. 227, 169 C. C. A. 295, and cases cited: The Herm, 170 Fed. 60, 95 C. C. A. 336), and that respondent should therefore be charged with nothing more than the charter hire for the period of detention. But these cases all rest on the finding of fact that the extended or reduced period of service was within the contemplation of the parties, that the contract was meant

to cover a period of time measured rather by voyages than the exact length of months or days stated in the general words of the charter party. As was pointed out by Brown, District Judge, in The Straits of Dover (D. C.) 95 Fed. 690:

"The general purpose of the charter must be understood in accordance with common usage;" but (added the learned court) "had the charter been an absolute agreement to return the vessel at a fixed day, the result would have been quite different."

While maritime contracts or their interpretation are probably more subject to the influence of usage or general custom than, most other agreements, yet they are and a charter is a contract like another, subject to the same general rules and leading to the same liabilities. We must take these contract writing as they were made; and since neither by pleading nor evidence is any usage or custom, maritime or otherwise, invoked to control construction, we find the words plain and requiring for their comprehension nothing beyond themselves.

To a charter for harbor use only the whole doctrine of voyages is inapplicable; to speak of the trips from pier to pier made by harbor craft as voyages is an absurdity, recognized by the decisions marshaling maritime liens. The Gratitude (D. C.) 42 Fed. 299. Voyages in any proper sense were not within the contemplation of the parties; they did not think in terms of voyages; and for this fundamental reason the overlap cases have no application. Nor do the written contracts contain any words modifying the obligation to return at the expiration of a month. That the boats were to be returned light covers merely the condition on return; the word cannot be construed as an extension of the time of return.

As to the lighter which was at a Brooklyn pier when the charter period ended, no reason is shown for not redelivering her, except the inconvenience and expense of taking off the subcharterer's cargo. In respect of the three lighters frozen up in the Passaic river, they were doubtless kept there by the act of God; but the charter party contains no reservation, and winters rendering navigation of the still and shallow waters of Newark Bay and Passaic river difficult, if not impossible, are by no means unknown. Such a contingency might, of course, have been anticipated and guarded against. It is held by controlling authority that—

"A party may by an absolute contract bind himself to perform things which subsequently become impossible, or pay damages for the nonperformance; and such construction is to be put upon an unqualified undertaking, where the event which causes the impossibility might have been anticipated and guarded against in the contract."

It is only "where the event is of such a character that it cannot be reasonably supposed to have been in the contemplation of the contracting parties when the contract was made that they will not be held bound by general words, which, though large enough to include, were not used with reference to the possibility of the particular contingency" which afterwards happened. Chicago, etc., Ry. v. Hoyt, 149 U. S. 14, 13 Sup. Ct. 779, 37 L. Ed. 625. Cf. Rowe v. Peabody, 207 Mass. 232, 93 N. E. 604.

This rule applies, there having been no termination of contract by an impossibility of performance recognized by law or by frustration of adventure, as in the Claveresk (C. C. A.) 264 Fed. 276, or Texas Co. v. Hogarth Shipping Co. (C. C. A., Oct. T., 1919) 267 Fed. 1023. It follows that the decree must be reversed, and the cause remanded, with instructions to take evidence as to libelant's damages.

[2] The bald fact that libelant notified respondent that a higher rate would be charged if the lighters were kept after the charter period is unimportant. No contract resulted, and this action cannot lie to recover in the manner and form pleaded by libelant. Schoonmaker Company is entitled to damages for breach of the original contract of charter; the breach being failure to return at the expiration of the stipulated period.

It may be, as we held in Atlantic, etc., Co. v. A Cargo of Sugar, 249 Fed. 871, 162 C. C. A. 105, that the measure of damages will turn out to be the current rate of hire; but this depends on the inquiry whether, considering the then condition of New York Harbor and the difficulties of traffic, there was any actual employment available for these lighters during the period of greatest cold, or some portion of it. As to this we offer no opinion, further than to point out that the existence of real damage depends upon the existence of a real chance for profitable employment.

Decree reversed, with costs, and cause remanded for further proceedings not inconsistent with this opinion.