## ORVIG'S DAMPSKIBSELSKAB AKTIESELSKAB v. MUNSON S. S. LINE.

(District Court, S. D. New York. March 31, 1926.)

Shipping ☞58(3)—Damages for delay in redelivery by charterer must be minimized by hiring similar ship to carry out new charter.

Where an owner is unable to deliver his ship under a charter, because a prior charterer has failed to redeliver her at the time required by his charter, if the owner intends to ask damages for such failure, it is his duty to minimize the same by hiring a similar ship at the prevailing rate to take the place of his own under the new charter, and hence can recover only the market rate of his own ship for period of delay.

In Admiralty. Suit by Orvig's Dampskibselskab Aktieselskab, owner of the Norwegian Steamship Edvard Munch, against the Munson Steamship Line. On Exceptions to amended libel. Exceptions sustained, and libel dismissed.

Haight, Smith, Griffin & Deming, of New York City (Herbert K. Stockton, of New York City, of counsel), for libelant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Earl Appleman, of New York City, of counsel), for respondent.

GODDARD, District Judge. The respondent, a time charterer, has excepted to the owner's amended libel for damages

claimed for the failure of the respondent to redeliver the ship to the owners at the end of the period for which she was chartered, on the ground that the only damages claimed are special damages for nonperformance of a contract entered into between the libelant and a third party, of which no notice had been given to the respondent, and on the further ground that the amended libel does not state facts sufficient to constitute a cause of action.

### Facts.

The amended libel sets forth the making of a time charter between libelant and respondent "for a period of five months, three weeks more or less"; that the ship was delivered to the charterer on January 3, 1923, and that the charterer was obligated to redeliver the ship not later than June 24, 1923, a period of exactly five months and three weeks after the vessel went on hire to the charterer; that the charterer failed and refused to redeliver the ship until July 1, 1923; that hire was paid at the charter party rate up to and including the date of redelivery. It is further alleged that on or about May 10, 1923, the libelant entered into a charter party with Malcolm McKay, Limited, for the carriage of a cargo of deals from Parrsboro Roads or Miramichi to the United Kingdom, with a canceling date of June 30, 1923, and that after redelivery by respondent on July 1st the vessel proceeded to Miramichi, where she arrived on July 9th; that said Malcolm McKay, Limited, exercised its option to cancel this charter, and that the libelant made still another charter at a lower rate than that in the said McKay charter for a carriage of a cargo of wood pulp to London.

The damages demanded are the difference between the freight that would have been obtained under the said McKay charter, which was canceled because of respondent's failure to redeliver the ship on time, and the freight actually obtained under the wood pulp charter—a difference alleged to amount to $6,882.48. There is no allegation that the respondent at any time had notice of the charter which the libelant entered into with said Malcolm McKay, Limited, on May 10, 1923. Respondent contends that the owner was entitled only to hire at the charter rate.

The question presented here would seem to be one that would have long ago been settled, but counsel have not submitted any decision of the courts of this country directly in point, nor have I been able to find any. Where an owner of a ship finds himself unable to deliver her to a charterer because of the failure of another, who has had her un-der charter, to redeliver her as called for under his charter, it seems to me to be the duty of the owner to minimize the damages, if he intends to call upon the first charterer for damages, and that it then becomes incumbent upon him to secure, at the prevailing rate, a similar ship, and deliver her to his new charterer in place of his own, which his first charterer had failed to redeliver.

If this assumption is correct, then the loss which he has sustained, and the damage which he would be entitled to recover from the one who detained his ship, would be the difference between the hire he receives from the charterer of his own ship and the rate he has to pay in the market for the ship which he substitutes in her place. Such a rule would enable him to fulfill the advantageous charter which he had made when rates were higher, as they were in May in the case now under consideration, and he would thus secure for himself the benefit of the profits of such charter. The owner should receive from the one who detained his ship the same rate which he has to pay in the open market to obtain another similar ship to enable him to fulfill his new charter. If he had his own ship it would not be necessary for him to charter another; therefore his damage would be the then market rate of the ship which he was compelled to replace, or, in other words, his own ship.

From the allegations set forth in the libel, to which exceptions have been made, it appears that libelant has been paid for the hire of its ship at the market rate for such period as the ship was detained beyond the date allowed under the charter. Therefore libelant has no further claim to damages. Such result would seem to be consistent with Schoonmaker-Conners Co. v. Lambert Transp. Co. (C. C. A.) 269 F. 583; Atlantic Fruit Co. v. A Cargo of Sugar, 249 F. 871, 162 C. C. A. 105.

The application of the rule contended for by libelant would, in many instances, lead to uncertainties and difficulties, where the facts are similar to those here; for it is to be noted that in the present instance the respondent had no notice of the charter which libelant had entered into with Malcolm McKay, Limited; also that the delay in the redelivery of the ship was not occasioned by a tort committed by respondent. Of course, it is unnecessary to consider, in the present case, whether special damages might be recovered under such conditions or what the measure of damage should be.

In Snia v. Suzuki [1924] 17 Lloyd's List, 78, at page 88, a somewhat similar situation

to the present one arose; the defendant having chartered the steamship Yuri Maru to plaintiff for a period of nine months, and the plaintiff making two valuable subcharters, of which the defendant had no notice. The ship entered on the performance of the time charter, but had difficulty with her propellers. This difficulty caused a delay of 70 days. The canceling dates of the subcharters having expired, the plaintiff repudiated the charter and sued the owner for damages, claiming, among other items, the profits that would have been made from the two subcharters. Mr. Justice Greer said:

"I have pointed out that there was no knowledge on the part of the defendants of the special contracts which had been made by way of subcharters by the plaintiffs, and therefore they are not responsible for the actual loss sustained by the loss of those subcharters. * * * The measure of loss I take to be the difference between the value of the vessel in the market as a trading vessel for the period of the charter party and the rent which would have had to be paid." .

In the Court of Appeal, where the judgment of the lower court was affirmed, Lord Chief Justice Bankes said, in 18 Lloyd's List, 333, at page 336:

"I entirely agree with what the learned judge said (referring to the above statement of Mr. Justice Greer), that, in estimating the damages here, the measure was not to be calculated having regard to the special contracts which the charterers had in effect entered into, of which they had given the ship owner no notice; but I am not saying that those contracts may not be looked into, provided it is quite clear that they are not looked into, except for the possible purpose of arriving at what were the market conditions prevailing at the time they were entered into."

The exceptions are sustained, and the libel should be dismissed, and a decree may be entered in accordance with the above.