## ORVIG'S DAMPSKIBSELSKAB AKTIE-SELSKAB v. MUNSON S. S. LINE.

(Circuit Court of Appeals, Second Circuit. January 10, 1927.)

No. 131.

Shipping ⊗═⊃58(2)—Under pleadings, charter-er held not liable for owner's loss of charter party on failure to return vessel within stipulated time.

Owner of ship *held* not entitled to recover against charterer for special damage resulting from loss of charter party, because of charter-er's failure to return ship within time stipulated, in absence of pleading or proof of custom or usage, or that charterer had notice of subsequent charter party.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by Orvig's Dampskibselskab Aktieselskab against the Munson Steamship Line. Decree dismissing the libel (15 F.[2d] 99), and libelant appeals. Affirmed.

Libelant, owner of the steamship Edvard Munch, chartered the same to respondent on time and in the common "government form." The agreement was "to hire said steamship from the time of delivery for five (5) months, three weeks more or less." The contract to pay was this:

"The charterer shall pay for the use and hire of the said vessel $1.30 * * * per ton dead weight * * * per calendar month, commencing on and from the day of her delivery, * * * and at and after the same rate for any part of a month; hire to continue until the hour of the day of her redelivery in like good order and condition, ordinary wear and tear excepted, to the owner (unless lost) at a safe United States Atlantic port north of Hatteras, port at charterers' option."

Libel alleges that the Munch was delivered to respondent January 3, 1923, and that respondent charterer was obliged to redeliver not more than five months and three weeks later, to wit, June 24, 1923; but redelivery was not made until July 1, 1923, and at Norfolk, Virginia. Charter hire was paid to the time of redelivery and at the charter party rate, which was also the then market rate.

On May 10, 1923, libelant had chartered the Munch for a cargo to be loaded at Miramichi, N. B., for United Kingdom, which charter contained as a canceling date June 30, 1923. The Munch endeavored to fulfill this charter, but could not, and did not leave Norfolk until July 2d, nor arrive at Miramichi until July 9th, when the vessel was tendered, the canceling date availed of, and the business lost.

Thereupon libelant, on July 11th, chartered the Munch in the general neighborhood she then was, and "at the best terms obtainable under the circumstances." But these terms were not nearly so good as those obtainable and obtained when the charter of May 10th was made, wherefore libelant sued for the difference between the probable profits on the May 10th charter and the actual profits on that of July 11.

To this libel respondent filed a peremptory exception, stating generally that the libel did not state facts constituting any cause of action, and specifically that the "damages claimed to have been sustained by reason of the alleged breach are special damages resulting from nonperformance of a contract between the libelant and third parties, of which notice was never given to the respondent."

The court below sustained the exception and dismissed the libel; whereupon libelant appealed.

Haight, Smith, Griffin & Deming, of New York City (Herbert K. Stockton, of New York City, of counsel), for appellant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Earl Appleman, of New York City), for appellee.

Before HOUGH, HAND, and MACK, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). This suit is based upon the breach of an undoubted maritime contract, and the form in which it is presented strongly indicates an attempt at a "case stated" for the opinion of the court.

We have before us a libel that states as facts some matters which can never be more than legal conclusions, also the written charter party; but we know nothing of the circumstances surrounding its fulfillment or occasioning its breach, and are substantially asked from the form of the contract to lay down a rule or rules which would affect charter parties or breaches thereof under any or all of the peculiarly changing circumstances

of maritime affairs. We shall endeavor to avoid such a performance and stick closely to the skeleton of facts presented.

Before now we have said that, "while maritime contracts or their interpretation are probably more subject to the influence of usage or general custom than most other agreements, yet they are and a charter is a contract like another, subject to the same general rules and leading to the same liabilities." Schoonmaker v. Lambert (C. C. A.) 269 F. 583, at 585. This libel asserts that the latest date upon which respondent could lawfully redeliver the Munch was June 24th, viz. five months and three weeks after the date of delivery. This is not a fact, but a legal conclusion, said to be inevitable under Prebensens v. Munson S. S. Line Co. (C. C. A.) 258 F. 227. We shall assume it to be true, but for argument's sake only. It is next said that the vessel's retention until July 1 was a breach of charter party, which is the same legal conclusion. We shall assume this to be true, though we are not informed of the circumstances of retention, nor of any maritime difficulties that may have rendered retention inevitable, and perhaps excusable.

By these assumptions we conclude that respondent was guilty of a breach of contract, for which the usual compensation by way of damages has been the current rate of hire during the period of continuing breach. Atlantic Co. v. A Cargo of Sugar (C. C. A.) 249 F. 871. Whether, if current hire had been less than charter rate, the latter rate would have prevailed, is not a question before us; it being admitted that during the week of breach the charter and current rates were the same.

Therefore our question is whether libelant could, by fixing his steamer for delivery to a new charterer at a remote port on June 30th, and doing this with the knowledge that he had no right to redelivery from the respondent until June 24th, hold respondent in damages for the loss of that business, and do so without any notice in the premises to respondent.

But the question goes even further, and we are not informed whether the shipping market at Newport News and vicinity had gone off between May 10th and July 2d. Presumably the Munch was chartered in December at current rates, and we know that current rates and charter rates were (semble universally) the same during the week of detention, so that we are asked to hold that, if on May 10th there was a brief boom in shipping, libelant had good right to fix his vessel for a date shortly after charter expiration at the rate of such temporary rise, and without notice to the charterer.

But even this is not all; the libel asserts that, when the fixture for June 30th failed, and failed at a remote New Brunswick port, the owner's duty was fulfilled by rechartering in that unfrequented neighborhood and on the best terms *there* "obtainable under the circumstances."

Result is that, while we are informed that the current rate was the charter rate on July 1st and at Newport News, we do not know whether the original Miramichi charter was better or worse than the charter in suit, and we are asked to hold as a general proposition that it was libelant's absolute right to start for Miramichi after the canceling date and put on respondent the risk of rejection and ensuing apparent sacrifice of the vessel.

Under these circumstances we hold, and this is the full extent of our holding, that without pleading or proof of custom or usage, with nothing before us but a charter which is fundamentally a contract like another, it is without precedent in law and against justice that libelant should recover the special damage caused by the loss of the charter party of May 10th without any notice thereof to respondent.

Whether, if notice had been given, respondent would or could have been responsible under the other circumstances shown, is not a question before us.

Decree affirmed, with costs.