## THE RYGJA.

(Circuit Court of Appeals, Second Circuit. April 14, 1908.)

### No. 208.

1. SHIPPING—TIME CHARTER PARTY—USE OF WORD "ABOUT."

   The word "about," used in a time charter in designating the length of the term, is applicable to the term whether it be over or under the exact term stated, and, if the voyage terminates so near the end of the fixed time as to make another voyage unreasonable, the charterer may deliver or the owner may withdraw the vessel, or, if another voyage is reasonable, the charterer may require it at the charter rate of freight.

   [Ed. Note.—For other definitions, see Words and Phrases, vol. 1, pp. 21–28.]

2. SAME—TERMINATION OF CHARTER.

   A charter was for "about six calendar months," with a privilege of renewal to the charterer on notice for about six months more, which notice was given. The vessel completed the voyage she was then on 50 days after the expiration of the first six months, and entered upon another. *Held*, that the first term ended and the second began at that time, and not at the end of six months from the time the first began, and, that on the termination of the second voyage in New York some 30 days before the expiration of six months from the time it commenced, the charterer was entitled to exercise an option given him by the charter party to redeliver the vessel in a European port.

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 149 Fed. 896.

Ralph James M. Bullowa, R. J. Bullowa, and Sutherland D. Smith, for appellant.

Convers & Kirlin and J. Parker Kirlin, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. The Tweedie Trading Company chartered the steamship Rygja for a period of about six calendar months to be employed between, among others, ports in the United States and/or West Indies and/or South America and/or Europe.

The charter party contained the following clauses:

"(4) That the charterers shall pay for the use and hire of the said vessel, one thousand and twenty-five pounds sterling per calendar month, commencing on and from the day of her delivery, as aforesaid, and at and after the same rate for any part of month hire to continue until her delivery, with clean holds to the owners (unless lost) at a United States, Gulf or Atlantic port, or a port in Europe at charterers' option."

"(25) That the charterers shall have the option of continuing this charter for a further period of about six calendar months more on giving notice thereof to the owners or their agents one month previous to the expiration of the first named term."

July 13, 1905, the steamship was delivered at a port in Italy. She proceeded to New York, loaded for South America, thence to the West Indies, thence to New York, where she completed her discharge March 1, 1906. The steamship then loaded for South America, thence to Cuba, thence to New York, where she completed her discharge August 4, 1906. December 12, 1905, the charterer declared its option for a second term under clause 25. June 12, 1906, the charterer declared its option to redeliver the steamship in Europe, a privilege which the testimony shows was valuable. The master refused to load for a European port under charterer's orders, and the charterer brought this action for damages for the withdrawal of the steamship from its use.

The question is did the second term begin at the end of the first six calendar months, viz., January 13th, or at the termination of the voyage, March 4th. No commercial understanding or practice is proved, and the construction of the clause is a pure question of law for the court to decide. Charters for a fixed period involve from the nature of things considerable difficulties because of the uncertainty as to the time voyages are likely to occupy. At the expiration of a fixed term the charterer is no longer entitled to possession. If in the employment of the ship he overruns the term, he is certainly liable at the charter rate of freight for the overlap, and, if freights have risen, to the difference between the market rate and the charter rate in addition. If the last voyage of the vessel terminate so near the expiration of the fixed term that another voyage cannot be made, the charterer either loses that time entirely, or if he employs the vessel on another voyage, he does so at the risk of being liable for the increase of the market rate of freight for the overlap. A clause was inserted to cover overlaps like No. 4 in this charter, providing that the charterer should pay at the charter rate until delivery of the vessel at the return port. Judge Brown in a case of overlap construed such a provision to entitle the charterer to at least one round voyage of the character contemplated in the charter at the charter rate of freight, unless the delay was due to his own fault. The Straits of Dover Steamship Co. v. Munson (D. C.) 95 Fed. 690. In the case of an underlap he held, collecting the intention of the parties from the whole document, that the charterer might employ the vessel on the shortest voyage contemplated by the

charter at the chartered rate of freight even if it was certain to overlap the term. Anderson v. Munson (D. C.) 104 Fed. 913.

In this charter the term is not an absolutely fixed period, but is "about six calendar months." The district judge restricted the effect of the word "about" to the underlap. Doubtless in a charter containing a clause like No. 4 the word is not necessary because that clause accomplishes the same thing. Still we think the word "about" applicable to the term whether it be over or under six calendar months, and that, if the last voyage terminate so near the end of the fixed time as to make another voyage unreasonable, the charterer may deliver and the owner may withdraw the vessel, or, if another voyage is reasonable, the charterer may require it at the charter rate of freight. This leaves room for dispute in the case of an underlap as to what voyage is reasonable, but that is a difficulty which cannot be avoided where a fixed term is not agreed upon. In this case, if there were no question of a second term, it could not be denied that the charter terminated March 4th. The charterer having declared its option for a second term, we think the further period began to run from March 4th.

The claimant relies much upon the fact that the charterer declared its option to the second term December 12, 1905, just one month and one day before the expiration of the first six months. We do not think this proves an understanding that the term should necessarily end then. It is natural under such charters to give notice with reference to the fixed period because it is certain, while no one can tell exactly when voyages will terminate, whether they underlap or overlap the fixed period. Mr. Tweedie testifies that he acted in a spirit of caution, and the claimant certainly cannot complain of getting a longer notice than the charter required.

The English cases cited are consistent with each other and with the foregoing views. In Bucknall Bros. v. Murray, 5 Com. Cas. 312, there was but a single term of about six calendar months which expired with an overlap for the last voyage ending at New York. The charterers contended that they had an option to redeliver the vessel in the United Kingdom. The court held that if they had such an option it could only be declared before the charter party came to an end. In Dene Steamshipping Co., Ltd., v. Bucknall Bros., reported in the same volume at page 372, the charterer was held to have the right to send the vessel on another voyage before the six calendar months under the charter had expired, although the voyage was certain to overlap. Upon the same principle a contrary result was reached in the Istok, 7 Com. Cas. 190, where it was held that under a charter for 12 months the charterer could not send the vessel on a return voyage after the fixed period has expired.

In the case before the court the voyage taken was a usual one and as it terminated March 4th, about one month and nine days was left of the second term when the steamship discharged August 24th, and the charterer was entitled to the benefit of its option to redeliver her at a port of Europe.

The decree is reversed, and the court below is directed to enter a decree for the libelant with a reference to ascertain the damages with interest and costs.