## TWEEDIE TRADING CO. v. SANGSTAD.

(Circuit Court of Appeals, Second Circuit.    June 14, 1910.)

### No. 248.

1. SHIPPING (§ 40*)—TIME CHARTER—EXPIRATION.

A steamer was chartered "for a period of about twelve months, charterers guaranteeing to redeliver steamer within three weeks, more or less, of this period."    Subsequently the parties agreed that the charter should be "extended for a further period of three calendar months from expiration of period named in original charter."    Three weeks before the end of the year the charterer gave notice that it elected to use the steamer for the maximum period of one year and three weeks.    *Held*, that it was within its rights, and that the extension began at the expiration of that time.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 40.*]

2. SHIPPING (§ 58*)—CHARTER—WITHDRAWAL OF VESSEL BY OWNER—DAMAGES.

A time charter of a steamer gave the charterer the right to redeliver the vessel at any time during six weeks.    Twelve days before the expiration of the time the owner withdrew her from the charter; the charterer being about to send her on another voyage which could not be completed within the time, and the owner having rechartered her, to the charterer's knowledge.    *Held*, that while the owner had no right to take the vessel at that time, in view of the fact that the charterer could not employ her during the remaining time, repayment of the hire paid from that time forward and payment for the coal on board was full compensation for its damages; it not being entitled in equity to recover the expenses incurred in contemplation of the intended voyage.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 58.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. SHIPPING (§ 58*)—SUIT FOR DAMAGE TO CARGO—PLEADING—ISSUES—PROOF AND VARIANCE.

Where a libelant rested its claim for damage to cargo on the ground of improper stowage in its libel, it cannot recover on the ground of unseaworthiness of the vessel, an issue which was not tried.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 58.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Tweedie Trading Company against Actieselskabet Sangstad. Decree for respondent, and libelant appeals. Affirmed.

Ralph J. M. Bullowa, for appellant.
J. Parker Kirlin and Charles R. Hickox, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. This case involves the claim of time charterers for $3,844 damages claimed because of the owners' withdrawal of the steamer Sangstad and for $66.70 expenses of reconditioning bags of canary seed stowed in the lower forepeak and stained by oil leaking from the ship's stores in the upper forepeak.

November 21, 1904, the vessel was chartered "for a period of about twelve months, charterers guaranteeing to redeliver steamer within three weeks more or less of this period" at £825 per calendar month and at and after the same rate for any part of a month, payable half-monthly in advance. This six weeks and guaranty provision creates a sort of twilight period which distinguishes this charter from charters for a fixed term or charters for "about" a certain period which we considered in the case of The Rygja, 161 Fed. 106, 88 C. C. A. 270.

By the charter the owners agreed to let, and the charterer agreed to hire, the vessel so that if the charter terminated within the twilight period, e. g., when sufficient time was not left to complete any of the voyages authorized, it would seem as if the owners had the same right to withdraw the vessel from the service of the charterer as the charterer had to redeliver her to the owners. But we think the provision was intended for the benefit of the charterer and gave it the right if it chose to do so to take the vessel for eleven months and one week or for twelve months and three weeks with, however, the duty of redelivering at the date fixed. Certainly this was the practical construction which the parties gave to it because on November 1, 1905, the charterer notified the owners that it elected to use the steamer for the maximum period, viz., one year and three weeks. The owners made no objection and after the expiration of that time, viz., December 12, 1905, the charterer paid and the owners accepted hire at the increased rate of £900 provided for in the extension of the charter now to be considered.

October 6, 1905, the parties agreed that the charter should be "extended for a further period of three calendar months from expiration of period named in original charter, charterers agreeing to redeliver steamer within two weeks less or any part thereof or within four weeks

more or any part thereof than this period" and to pay hire at the rate of £900 instead £825 per calendar month.

We think the district judge was right in this situation of things in holding that the original charter terminated and the extension began December 12, 1905.

Under this extension the charterer had a right to redeliver within two weeks or any part thereof less or within four weeks or any part thereof more than the period of three calendar months from December 12, 1905, but was bound not to redeliver either earlier or later than those dates. Accordingly it had a right to the use of the vessel to April 9, 1906.

March 21, 1906, the owners billed the charterer for one-half the hire of the month beginning that date—that is, up to April 6th—which it paid. The evidence shows that no voyage authorized by the charter could be performed before April 9th.

March 26th the vessel lay unloaded at Philadelphia; the charterer having the right to redeliver her or to use her for 14 days longer and no more.

The parties were apparently contemplating, though no agreement was made on the subject, a redelivery at a port in the United Kingdom or on the Continent between Bordeaux and Hamburg, which would have been entirely agreeable to the owners, as they had made a new charter for the vessel to be entered on in Europe.

The charterer supplied the vessel with coal and ordered her to Hampton Roads for orders, where she arrived March 28th. It then determined to send the vessel to Cuba for a cargo of sugar to New York, whereupon, March 29th, the owners withdrew her from the service of the charterer and returned the hire paid for the time between March 29th and April 6th.

The owners had no right to do this before April 9th, if the charterer chose to keep the vessel, but as it could not employ her between March 29th and April 9th, the return of the hire for that period and payment for the coal put aboard would be full compensation except for expenses incurred in contemplation of another voyage. It is evident that both parties were contemplating another voyage and liability for expenses incurred because of this by the charterer must depend upon the equities of the case. The owners had made a new engagement to be entered upon by the vessel in Europe; the charterer was fully aware of this fact. It solicited freight for Europe and ordered preparations to be made by the ship for grain, which was a European cargo. The charterer must have known that this was the understanding of the owners and that it was a reasonable understanding. The equities seem to us to be entirely with the owners, and we think the trial judge was right in dismissing the charterer's claim for damages for wrongful withdrawal.

The second cause of action is for the expense of rebagging canary seed carried in the lower forepeak. The only cargo space left when the seed was loaded was the afterpeak and the lower forepeak. The master wished the seed to go in the afterpeak because he thought the forepeak not a fit place for what he called perishable cargo. The

charterer's stevedores, on the other hand, insisted on its going in ·the forepeak because another consignment of canary seed had been put in the afterpeak and the owners of the two consignments feared they might get mixed. The evidence satisfies us that the forepeak is a proper place for such a cargo, and that it was so on this occasion but for the fact that oil from the ship's stores in the upper forepeak leaked through the deck. The libel rested the claim on bad stowage, but the libelant now puts it on unseaworthiness; that is, the unfitness of the ship to carry the cargo. The claimant has had no opportunity to meet this charge, and for this reason consideration of the claim ought to have been denied.

The decree is affirmed, with costs.