ROPNER et al. v. INTER-AMERICAN S. S. CO.

(Circuit Court of Appeals, Second Circuit. April 10, 1917.)

No. 174.

SHIPPING ⬡⟹49(2)—TIME CHARTER—CONSTRUCTION—RATE OF HIRE FOR OVERTIME.

Where a time charter of a steamer required payment of the hire semimonthly in advance, and provided that, should she be on her voyage to-

ward port of delivery when a payment became due, it should be paid for the length of time estimated by the parties to complete the voyage, the difference, if any, either way, to be settled on her redelivery, the owner was entitled to payment for overtime in such case at the charter rate only, and not at a higher market rate.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Robert Ropner, John Henry Ropner, and William Ropner against the Inter-American Steamship Company. Decree for respondent, and libelants appeal. Affirmed.

Burlingham, Montgomery & Beecher, of New York City (Charles C. Burlingham and Benjamin W. Wells, both of New York City, of counsel), for appellants.

Haight, Sandford & Smith, of New York City (Clarence Bishop Smith, of New York City, of counsel), for appellee.

Before WARD, ROGERS and HOUGH, Circuit Judges.

WARD, Circuit Judge. The libelants, owners of the steamer Teesdale, filed this libel against the charterer, respondent, to recover hire for an overlap of 4 days 20¼ hours. For this period they contend that they are entitled to the market rate of freight, which was higher than the charter rate; whereas, the charterer says that it is only obliged to pay the charter rate. Judge H. A. M. Smith sustained the contention of the charterer.

The steamer was chartered for a period of 18 calendar months minimum and 21 calendar months maximum at the charterer's option. The charterer exercised its option by taking the steamer for 21 months, so that we start with the fact that the charter was for a flat period of 21 months. The material provisions of the charter party are:

"4. That the charterers shall pay for the use and hire of the said vessel (5/–) five shillings no pence British sterling per ton on total deadweight capacity of ship including bunkers on Lloyds' summer freeboard per calendar month, commencing on and from the day of her delivery as aforesaid, and at and after the same rate for any part of a month; hire to continue until her delivery in like good order and condition to the owners (unless lost) at a port in the U. S. north of Cape Hatteras at charterers' option.

"5. That should the steamer be on her voyage towards the port of return delivery at the time a payment of hire becomes due, said payment shall be made for such a length of time as the owners, or their agents, and charterers, or their agents, may agree upon as the estimated time necessary to complete the voyage, and when the steamer is delivered to owners' agents any difference shall be refunded by steamer or paid by charterers, as the case may require.

"6. Payment of the said hire to be made in cash in New York at the current short sight rate of exchange semimonthly, in advance, and in default of such payment the owners shall have the faculty of withdrawing the said steamer from the service of the charterers without prejudice to any claim they (the owners) may otherwise have on the charterers, in pursuance of this charter."

Under article 4, separately considered, the owners would have been entitled to the steamer on May 2, 1915, and, if not then redelivered, they could have held the charterer either for the charter rate or the market rate, at their option, during the period of overlap. But article

5 prescribes what shall be done, in case it appear on the date the last semimonthly hire in advance is due that there will be an overlap, viz., the parties are to agree on an estimated time necessary to complete the voyage, and the charterer shall pay additional hire for that period, any deficiency to be paid by it when the steamer is redelivered, or any excess to be returned by the owners.

It is quite obvious that the contracting parties were contemplating the charter rate of hire. If the owners had intended to reserve the option of collecting the market rate, they should have said so, and we think would have said so. This is the natural construction of the language used, and there is another consideration sustaining it. The last semimonthly installment of hire fell due April 17, 1915. It was payable in advance up to May 2d. The steamer was then on a voyage to the port of redelivery. While the parties could then estimate the time needed to complete that voyage, how could they know what would be the market rate of freight two weeks later, and so calculate the amount to be paid down by the charterer for the estimated overlap? The charterer did pay hire at the charter rate for the overlap, which was received without prejudice by the owners before this libel was filed. In Straits of Dover S. S. Co. v. Munson (D. C.) 95 Fed. 690 and Anderson v. Munson (D. C.) 104 Fed. 915, Judge Addison Brown had occasion to consider time charters for a flat period which contemplated a possible overlap. He held that the charterer might require the steamer to make a reasonable voyage, even if it would overlap, paying in such event only the charter rate for the period of overlap. The last voyage in the present case was obviously a most reasonable one.

The decree is affirmed.