## DAMPSKIBS AKTIESELSKABET JEANETTE SKINNER v. MUNSON S. S. LINE.

Circuit Court of Appeals, Second Circuit.
June 6, 1927.

No. 321.

1. **Shipping** ⚙➾49(3)—**Under provision of charter party affecting payment of hire during time lost from "deficiency of men or stores," etc., charterer was liable for hire during time lost in fumigating (Treasury Regulation No. 103).**

Under clause of charter party exempting charterer from payment of hire during time lost from "deficiency of men or stores, fire, breakdown, or damages to hull, machinery, or equipment, grounding, detention by average accidents to ship or cargo, dry-docking for the purpose of examination or painting bottom," charterer was not excused from payment of hire during time lost in fumigating vessel under Treasury Regulation No. 103, or from liability for cost of such fumigation.

2. **Shipping** ⚙➾49(3)—**Delay for fumigating held not delay from "breakdown," within charter party (Treasury Regulation No. 103).**

Time lost in fumigating vessel, pursuant to Treasury Regulation No. 103, is not a delay from "breakdown," within meaning of breakdown clause of charter party.

3. **Shipping** ⚙➾49(3)—**Delay for fumigating ship held not delay for "any other cause preventing full working of the vessel," within meaning of charter party (Treasury Regulation No. 103).**

Under provision of charter party exempting charterer from liability for hire during time lost from certain physical defects of vessel, or by "any other cause preventing the full working of the vessel," charterer was not exempt from liability for hire during delay for fumigating required by Treasury Regulation No. 103.

4. **Shipping** ⚙➾50—**"Port charges," for which charterer was liable, held to include cost of fumigating necessary to clearance.**

Under charter party requiring charterer to pay "port charges," charterer was required to pay cost of fumigating ship necessary to clearance from port.

[Ed. Note.—For other definitions, see Words and Phrases, Port Charges.]

**5. Shipping ⬥50—Fumigation held not included in owner's obligation to keep vessel in "efficient state in hull, machinery, and equipment."**

Fumigation of vessel is not a part of owner's obligation under charter party to "keep the vessel in a thoroughly efficient state in hull, machinery, and equipment for and during the service."

**6. Shipping ⬥50—Owners responsible for navigation of steamer, insurance, crew, and all other matters, same as when trading for their own account, held not liable for cost of of fumigating (Treasury Regulation No. 103).**

Clause of charter party providing that owners shall remain responsible for all navigation of the steamer, insurance, crew, and all other matters, same as when trading for their own account, *held* not to make owners liable for cost of fumigating required by Treasury Regulation No. 103.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the Dampskibs Aktieselskabet Jeanette Skinner, owner of the Norwegian steamship John Bakke, against Munson Steamship Line, to recover balance of charter hire. From a decree for libelant, respondent appeals. Affirmed.

Rumsey & Morgan, of New York City (Mark W. Maclay and Frank A. Bernero, both of New York City, of counsel), for appellant.

Haight, Smith, Griffin & Deming, of New York City (Herbert K. Stockton, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. The John Bakke was chartered for 12 months, by the appellant, from its owner, the appellee, to carry lawful merchandise in such lawful trades as the charterer should direct, including ports of the United States, West Indies, Carribean Seas, and Europe. The charter is dated May 9, 1925, and contains the following provisions material here:

"1. That the owners shall provide and pay for all provisions, wages, and consular shipping and discharging fees of the captain, officers, engineers, firemen, and crew; shall pay for the insurance of the vessel, also for all the cabin, deck, engine room, and other necessary stores, and maintain her class and keep the steamer in a thoroughly efficient state in hull, machinery, and equipment for and during the service.

"2. That the charterers shall provide and pay for all the coals, except as otherwise agreed, port charges, pilotages, agencies, commissions, consular charges (except those pertaining to the captain, officers, or crew), and all other usual expenses, except those before stated, but when the vessel puts into a port for causes for which steamer is responsible, then all such charges incurred shall be paid by owners."

"7. That the whole reach of the vessel's holds, decks, and usual places of loading and accommodations of the ship (not more than she can reasonably stow and carry), shall be at the charterers' disposal, reserving only proper and sufficient space for ship's officers, crew, tackle, apparel, furniture, provisions, store, and fuel."

"15. That in the event of the loss of time from deficiency of men or stores, fire, breakdown, or damages to hull, machinery, or equipment, grounding, detention by average accidents to ship or cargo, dry-docking for the purpose of examination or painting bottom, or by any other cause preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost; and if, upon the voyage, the speed be reduced by defect in or breakdown of any part of her hull, machinery, or equipment, the time so lost, and the cost of any extra coal consumed in consequence thereof, and all extra expenses shall be deducted from the hire."

"25. Nothing herein stated is to be construed as a demise of the steamer to the time charterers. The owners to remain responsible for the navigation of the steamer, insurance, crew, and all other matters, same as when trading for their own account."

The ship was delivered May 5, 1925. She was fumigated July 1, 1925, because she had been in ports infested with bubonic plague, against which quarantine had been established. The charterer paid the expenses and charges. It also paid for two fumigations under a previous charter.

On January 18, 1926, the ship arrived in New York and was ordered fumigated by the Treasury Department under Regulation No. 103 because more than six months had elapsed since her last fumigation. Section 103 provides: "All vessels engaged in trade with foreign ports shall be fumigated not less than every six months for the purpose of destroying rats. This is best done when the vessel is empty." When the order was given to fumigate, notice was given to the appellee, as owner, to do so. It refused, and appellant complied with the requirement at a cost to it of $219.30. This, together with hire and coal consumed during the fumigation, in all $435.-

75, was deducted by it from the charter hire, and this libel, by the owner, has been sustained on exceptions filed to it, to recover the same from the appellant.

This court, in Clyde Commercial S. S. Co. v. West India S. S. Co., 169 F. 275, held that the detention by quarantine authority is a restraint of princes and peoples, and an exception which prevented the owner from prosecuting his voyage with dispatch, and relieves him from liability to the charterer for the delay so caused. "The case is to be treated as if no delay had occurred. * * * The charterer is not protected by the exception from paying hire, because it was not thereby prevented from paying hire, and because it had the use of the vessel for which it was to pay notwithstanding interruption." The Clyde Case deals with the question of the detention of a ship in quarantine, and was not a claim for the time actually employed in the process of fumigation. In Gow v. Steamship Line (C. C. A.) 174 F. 215, a vessel was detained for fumigation and observation of the crew, and we held that the owner should be allowed his hire for the period of fumigation under the exception of restraint of princes. But under the "breakdown" clause, allowing deduction of hire "in the event of loss of time from deficiency of men," the charterer was excused from paying for the time had due to the observation of the crew.

[1-3] The claim is made that, under clause 15 of the charter, the charterer is relieved. But the events named there, which permit a cessation of hire payments, relate to the physical state of the vessel or her crew and equipment. Fumigation by government order is in no way related to the crew, stores, or physical damage to the vessel. Nor is it similar to drydocking, for the purpose of examination or painting the bottom. They relate, by analogy, to repairs required for needs of the condition of the vessel. So far as the clauses of this charter dealt with breakdown, we perceive no different reasoning to be applied than that used in the Gow Case. Nor does the rule of ejusdem generis permit that delay or costs of fumigation be included within the "breakdown" clause. A provision of article 15, "any other cause preventing the full working of the vessel," has no application to fumigation. And under article 16 the owner is excused from not having his vessel in full working condition when the restraint of princes or peoples hold the vessel for fumigation. To hold otherwise would lead to undesired results. Ice, embargo, storm-bound, quarantine detention, and strikes are all causes preventing full working of the vessel, and still no one would expect suspension of charter hire for these. Randall v. Sprague (C. C. A.) 74 F. 247.

The cause for fumigation is due to trading between the United States and other ports. It is a United States quarantine regulation, and its application depends upon the foreign port to which the vessel is traded. The libel alleges, "trading with the West Indies, which are believed to be infested with rats." And the regulation requires the periodical six months fumigation. Various countries have similar regulations. They are not, by rule of the international law or otherwise, required to accept, as sufficient, the fumigation requirements of another country as in satisfaction of their own. It was the use of the vessel that made fumigation necessary. The appellant recognized this, and without complaint accepted it in the three previous requirements of fumigation.

[4] Moreover, under clause 2, the port charges "and all other usual expenses" are to be borne by the charterer. This requirement to fumigate every six months may well be classified as the usual expense of navigating the vessel. Certainly, under port charges, which the vessel must pay before she makes her clearance from a port, the cost, resulting from the requirement to fumigate, in order to clear a port, would be an obligation of the charterer. See Newman & Dale v. Lamport & Holt, 1896, 1 Q. B. Div. 20.

[5] The fumigation of a vessel is not a part of the owner's obligation to "keep the vessel in a thoroughly efficient state in hull, machinery, and equipment for and during the service." This refers to physical conditions. It does not contemplate the use of the vessel by the charterer. The owner, by the charter, furnished a vessel and a crew. His obligation required him to pay the expenses, such as the personnel of the ship, provisions, wages, and stores to maintain the ship as a navigating unit. If it was intended to mean anything more, the parties have not said it in their charter. The Queen Olga (D. C.) 162 F. 490. Fumigation is much like keeping a ship clean. As where a cargo of coal has been carried, it necessitates the cleaning of the holds and the charterer pays the cost of such cleaning. Dene Shipping Co. v. Tweedie Trading Co. (C. C. A.) 143 F. 854. Fumigation required when the ship is transferred over to the charterer is a much different matter than that during the time of the charterer's use of the vessel. See G. H. Schales, Ltd., v. Temperley S. S. Co., Ltd., 22 Lloyd's List, Law Rep. 533.

[6] Clause 25 of this charter, providing that

the owners shall remain responsible for all navigation of the steamer, insurance, crew, and all other matters, such as when trading for their own account, does not change the result. To accept the interpretation placed upon this clause by the appellant would make the owner responsible for such charges of use of the vessel as coal, stevedoring, pilotage, and port charges. The object of the quarantine laws and regulations is to safeguard the health of our citizens. A rat, or the fleas upon it, may become the carrier of the bubonic plague to a port of the country. This, of course, does not make the ship unseaworthy, or breach any of the clauses which are assumed by the owner as his obligation.

We are referred to arbitrations which have reached a different result from that which we here announce. We note, however, that these arbitrations dealt with other subjects, as well as matters of fumigation, and, as arbitrations go, with a spirit of compromise, it may well be that allowances were made for fumigation. It is sufficient to say that, in view of the clauses of the charter here referred to and the previous rulings of this court, we may not sustain the exceptions filed to this libel.

Decree affirmed, with costs.