**BRITAIN S. S. CO., Limited, v. MUNSON S. S. LINE.**

District Court, S. D. New York. Feb. 17, 1928.

**1. Shipping ☞40—Charter for "about" two months to three months held not to give charterer right to redeliver under two months.**

Charter of vessel from date of delivery "for about two months to about three consecutive months" held not to give charterer right to redeliver in less than two months.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, About.]

**2. Shipping ☞58(3)—Charterer redelivering vessel before expiration of charter and rechartering at lower rate held liable for original charter rate.**

Where, under such charter, the charterer redelivered the vessel before expiration of two months, and she was accepted under protest, but two days later, without prejudice to owner, rechartered her at a lower rate for a voyage which could reasonably be made within the three months of the original charter, the owner held entitled to the original charter hire for such voyage.

In Admiralty. Suit by the Britain Steamship Company, Limited, against the Munson Steamship Line. Decree for libelant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Charles R. Hickox and Earl Appleman, both of New York City of counsel), for libelant.

Rumsey & Morgan, of New York City (Mark W. Maclay, of New York City, of counsel), for respondent.

HAZEL, District Judge. On February 28, 1925, libelant, owner of the steamship Putney, entered into an arrangement by which the steamship, under a time charter, was delivered at a port in Cuba to respondent for use between safe ports in the United States and other safe ports in Cuba, West Indies, Central America, Carribbean Sea, Gulf of Mexico, and Mexico, or South America, not south of Demarara, and excluding ore trading, etc. For such use and hire the charterer was required to pay $1.30, our cur-

rency, per ton of the steamship's total dead weight capacity, payment semimonthly, in advance. The charter party states that the charterer agrees to hire the steamship from time of delivery for about two months to about three consecutive months, and until the hour of the day of her redelivery.

The Putney was delivered on March 20th, and on May 7th following, thirteen days before the two months expired from time of delivery, the charterer redelivered the ship to libelant who accepted under protest. On May 9th, two days after redelivery, the ship was again chartered to respondent, without prejudice, for a round trip to the West Indies at a lower rate of hire, within limits similar to those contained in the earlier charter. On completion of the trip, there was a redelivery of the vessel; the total time consumed under both charters being three months and three days.

[1] The primal question submitted relates to the charterer's right to deliver the ship on May 7th, prior to the expiration of the qualified two months' period, and an answer requires a construction of the phrase, "free from time of delivery for about two (2) to about three (3) consecutive calendar months."

In the Rygja, 161 F. 106, the Circuit Court of Appeals gave meaning to the word "about," used in connection with the charter of a vessel for about six calendar months, with leave of a further six months on giving notice. The option was exercised prior to the end of the first six months and while the vessel was still at sea. In defining the term "about," the Circuit Court of Appeals expressed the opinion that the term applied to the period, regardless of whether it was over or under six calendar months, and specifically if the last voyage terminated so close to the end of the maximum or fixed time as to make another voyage unreasonable, then the charterer had the right to deliver the boat to the owner, or, if another voyage was reasonable, the charterer could employ the ship at the charter rate of freight.

In Trechmann S. S. Co. v. Munson S. S. Line (C. C. A.) 203 F. 692, the time was for about twelve months. The charterer delivered the vessel twenty-nine days before the expiration of the time, and the court held that, since another voyage with cargo to Cuba and back would have been reasonable, no right of redelivery existed, although there was an overlap. In Munson v. Elswick Co. (D. C.) 207 F. 984, affirmed (C. C. A.) 214 F. 84, the charter "was for a period of about three months to about six calendar months, with an optional redelivery in Eng-

land." The vessel was withdrawn by the owner in South America on the expiration of the six months' period. The charterer objected on the ground that the charter conferred the right to load the vessel under the option clause of redelivery in Europe, but the court held the contrary and dismissed the libel.

In the present instance, the charter is apparently more in the owner's favor than in any of the cases mentioned. The charter "for about two (2) months to about three (3) * * * months" must be read together without severance to give reasonable and fair construction to the whole phrase. When thus considered, I think it is clear that the parties contemplated that the ship would be used between minimum time and maximum— three months or slightly more for overlap. The words "to about three months" are conspicuously material in any effort to ascertain the intendment of the charter party, and indicate that at the time of chartering there existed a probability of using the boat at least two months, or between two and three months. The adverb "about" no doubt was used to give a reasonable deviation in the period of time, with the right of redelivery at any time after the two months' period, but not anterior thereto, while the preposition "to" denotes the maximum limit of time for which the vessel was chartered.

[2] Accordingly, I think there was no right to terminate the charter on May 7th, since such time was not between the two and three months' limitation. There was testimony on both sides as to the length of the voyage from New York in ballast to Cuba and return loaded. For libelant, one witness testified that the duration would most likely be from twenty-one to twenty-four days, another nineteen to twenty-four; while respondent's witnesses, who were in its employ, said that the voyage would take from thirty to forty days, or twenty-five to twenty-six days, or twenty-nine to thirty-two days. This discrepancy must be harmonized by the probabilities, and hence I conclude that twenty-one to twenty-four days would be a reasonable estimate.

A claim for expense of fumigation of the vessel was made. She was fumigated at New York on April 10, 1925, three weeks after the delivery of the vessel to respondent. The statute requires a vessel to be fumigated when she has not been fumigated for a period of six months and while engaged in trading with ports outside the United States, and also on coming into a United States port from one of the foreign ports stated in the charter party. I think such an item of expense comes under article 2 of the charter, and therefore it must be borne by the charterer. The John Bakke (Dampskibs Aktieselskabet Jeanette Skinner v. Munson S. S. Line) (C. C. A.) 20 F.(2d) 345, 1927 A. M. C. 1011.

Libelant may have a decree recovering the charter rate of hire demanded in the libel, together with the expense of fumigation, deducting therefrom, however, the amount paid under the second charter, with costs.