## BRITAIN S. S. CO., Limited, v. MUNSON S. S. LINE.

Circuit Court of Appeals, Second Circuit.
March 18, 1929.

No. 235.

Rumsey & Morgan, of New York City (Mark W. Maclay and Ralph W. Brown, both of New York City, on the brief), for appellant.

Charles R. Hickox and Earl Appleman, both of New York City, for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). [1, 2] When a charter party is for a term of "about six months," or other stated period, the use of the word "about" is interpreted as signifying an intention to allow the charterer a reasonable leeway in respect to the date on which the vessel shall be surrendered. It is a recognition, based on the necessities of practical business, that her voyages cannot be planned so accurately as to bring her home on an exact date, and that the parties have contemplated the possibility of a reasonable shortening or lengthening of the stated term. Hence, if a voyage terminate in a port of redelivery before the end of the stated term, the charterer may require the vessel to make another "reasonable" voyage, even though it is certain to overlap the stated term. If, however, the time remaining before the end of the stated term is so short as to render another voyage "unreasonable," then the vessel may be surrendered by the charterer, or withdrawn by the owner, thus creating an underlap. These rules have been often stated by this court. The Rygja (C. C. A.) 161 F. 106; Trechmann S. S. Co., Limited, v. Munson S. S. Line (C. C. A.) 203 F. 692; Munson S. S. Line v. Elswick Steam Shipping Co., 207 F. 984 (D. C. N.

Y.), affirmed (C. C. A.) 214 F. 84; Dampskibs, etc., v. Tropical Fruit Co. (C. C. A.) 281 F. 740; The Negus, 298 F. 749 (D. C. N. Y.), affirmed (C. C. A.) 298 F. 752.

In the case at bar the District Court held that the phrase "for about two (2) to about three (3) consecutive calendar months" permitted no surrender of the vessel before May 20th; in other words, that there could be no underlap to the term of two months from her delivery. There is much force in the charterer's argument that the use of two "abouts" shows an intention to allow latitude at each end of the two to three month term, and that the court's construction gives no effect whatever to the first "about." But even if the charterer's construction be adopted, and it be conceded that an underlap would have been permissible under some circumstances, the option to surrender could be validly exercised on May 7th only if no "reasonable" voyage were then available. On conflicting evidence the court found that a reasonable estimate of the time required for a voyage from New York to Cuba and return was from 21 to 24 days. This finding is sufficiently supported to be accepted on appeal. It shows that the probable overlap from undertaking the voyage would be less than the 13-day underlap which would result from surrendering her on May 7th. Under such circumstances we think the voyage was reasonable in respect to its probable duration. So much is at least implied, if not decided, in The Negus and in Trechmann v. Munson, supra. That the voyage was commercially practicable and available to the charterer seems to be sufficiently demonstrated by the actual voyage under the charter of May 9th. Hence we agree with the court's conclusion that the redelivery on May 7th was premature and ineffective.

So we come to the question of damages. Where the charterer is privileged to make a voyage which will result in an overlap, and actually makes it, he must pay hire at the charter rate until redelivery. Straits of Dover S. S. Co. v. Munson, 95 F. 690 (D. C.) affirmed 100 F. 1005 (C. C. A. 2); Anderson v. Munson, 104 F. 913 (D. C.); Ropner v. Inter-American S. S. Co., 243 F. 549 (C. C. A. 2). The instant case presents the problem of what hire is payable where an overlapping voyage is privileged, but is not made; for the voyage performed under the second charter was without prejudice. The owner argues that, where an overlapping voyage is permissible, it is compulsory.

It is true that, in Munson S. S. Line v. Elswick Steam Shipping Co., supra, Judge

532

Veeder says (page 991): " * * * If the voyage be reasonable it is compulsory; that is, the charter hire must be paid." And similar language, relying upon the Elswick Case, may be found in Judge Hough's opinion in Dampskibs, etc., v. Tropical Fruit Co., supra, at page 742. Both of these statements, however, were plain obiter, and it is clear that Judge Veeder's dictum cannot have the meaning ascribed to it by the appellee, because later in the same paragraph he adds: " * * * The owner either gets his vessel back if no such voyage is practicable, or, if it is practicable and not ordered by the charterer, his charter hire to the end of the specified term."

In affirming Judge Veeder's opinion, we expressly reserved a decision on this point. It was, however, decided in Trechmann v. Munson, supra. That case held that, where the charterer could have set out upon an overlapping voyage, but refused to do so, such refusal did not entitle the owner to hire during the assumed duration of such a voyage, but only to the date when the vessel could be legally redelivered. There a vessel chartered for "about 12 months" was surrendered 29 days before the expiration of the 12-month period. A voyage which would take 43 days was available to her. To reduce the loss, the parties made a second charter, without prejudice, at a lower rate. This voyage took 59 days. The owner claimed hire at the original charter rate for the full 59 days. The District Court allowed the original rate for 43 days. On appeal, the owner was awarded the original rate for only 29 days; that is, until the expiration of the stated term of the charter.

■ It is clear that the charterer is under no duty to the owner to employ the vessel; his full duty is performed by paying hire to the end of the term agreed upon. On May 20th, the charterer could have made a valid redelivery. The option which the charterer had to use her beyond May 20th cannot give the owner the right to insist that the charterer shall do so. To say that it does is to put the charterer's arrangements at the owner's mercy, which is precisely the opposite of what is intended by the charter. So the damages should be limited to the difference between the two charter hires until the expiration of two months; that is, until May 20th.

■ The fumigation expenses must be borne by the vessel. This is not contrary to our decision in Dampskibs, etc., v. Munson S. S. Line, 20 F.(2d) 345. There the necessity for fumigation grew out of the ship's service under the charter. Here the necessity existed upon her delivery; the obligation to fumigate had accrued and was certain to be enforced upon her arrival at a United States port, to which the charterer was not only privileged to send her, but was, indeed, bound to send her, under the charter. Fumigation was required for the contemplated voyages when the ship was delivered. Hence she was no more fit for her service than she would have been had she been delivered in Cuba with unclean holds and sent in ballast to New York to lade. It could scarcely be contended that the expense of such cleaning of her holds in New York would not be on owner's account.

It is urged that the charterer's undertaking to pay port charges and usual expenses embraces fumigation, and that the absence of an express exception puts on the charterer the obligation for accrued fumigation, as well as fumigation necessitated by the charterer's use. To this we do not agree. All such covenants are to be read with regard to the owner's obligation to make his vessel fit for the service for which she is chartered.

The decree must be modified in accordance with the foregoing opinion, and the cause is remanded for that purpose. Costs of the appeal are awarded to the appellant.